## DUNCKELMAN v. SHOCKLEY.

### No. 5672.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Russell E. Gahagan, of Natchitoches, for appellant.

Julian E. Bailes, of Natchitoches, for appellee.

TALIAFERRO, Judge.

Two horses owned by plaintiff were accidentally killed by collision with defendant's truck, operated by his agent, Clyde Crow, at the hour of 11:30 P.M., February 16, 1937, two miles east of Clarence, in Natchitoches parish, on the concrete highway leading easterly to Winnfield. He sues to recover the value of the animals. For a cause of action he alleges that the animals were killed because of the negligent and careless operation of the truck by Crow in that it was at the time of the accident being driven at an excessive rate of speed and without him keeping a proper lookout for animals on the highway.

Defendant denied the charges of negligence and carelessness made against Crow and therefore denied liability to plaintiff for the value of the horses. He appealed from a judgment adverse to him.

It is lawful for stock to run at large in the territory about the scene of the accident.

At the time of the accident, Crow, accompanied by his wife, was driving easterly at the rate of 40 miles per hour en route to his home. He was introduced as a witness by plaintiff. His credibility, under the general rule of evidence, is tacitly vouched for by plaintiff. Mrs. Crow did not testify. No other person witnessed the accident. Crow says that the atmosphere was hazy and as he proceeded along the highway, he observed ahead and on his right side a grey horse coming thereupon, but was not asked nor did he undertake to fix the distance; that he instantly applied his brakes and swerved the truck to the left side and, simultaneously with these movements, another horse, of black color, from down in the left side ditch, "jumped into (onto) the truck and swerved me into the other one." He is certain that but for the sudden appearance and actions of the second horse, there would have been no collision. He did not see this horse until it suddenly emerged from below the dirt shoulder. The truck, according to his testimony, was run into from its left side by the animal. The impact forced the truck diagonally across the road, causing the collision with the grey horse.

If the accident happened in this manner, both collisions were unavoidable, so far as concerns Crow, and neither may be properly ascribed to his negligence or carelessness. There is but one circumstance in the record that tends to contradict his version of the order of the collisions. The body of the grey horse was found on the right shoulder some 20 feet west of that of the black horse, which was on the left shoulder. It is argued from these facts as a premise that it would have been impossible for the truck to strike the grey horse secondly because he was west of the black one; and if he was struck firstly, that it was due to the lack of attention and care of Crow in not observing him on the highway within time to avert the collision. There is some testimony tending to prove that the grey horse was carried or dragged by the truck approximately 20 feet after being collided with. His neck and all four legs were broken and his body otherwise mangled. These physical injuries, plus the fact that the body was carried some 20 feet, indicate strongly that this horse was run into by the truck with great force, which was certainly reduced materially if not entirely by the impact; and had this been the first collision, the black horse could not have been run into as violently as the meager testimony describing its injuries seems to indicate. The testimony does not disclose the nature of the injuries to the black horse save that some of his legs were broken. It might have been that he moved by his own power easterly along the road after the impact, or he might have been propelled easterly by the force of the impact. The truck stopped on the road following the accident, but the testimony does not disclose how far it traveled before so doing. Other facts and circumstances material to the case were not developed.

■ As before stated, Crow's testimony is all we have as to how the collisions occurred. No surprise was expressed by plaintiff at its character. If we discard his testimony, we are left to conjecture as to how the accident happened. If we accept his testimony at its face value, and we know of no valid reason for not so doing, it certainly does not make out a case for plaintiff.

"A motorist is not liable for injuries to an animal which without warning dashed into the road in front of his machine and was hit before the motorist could do anything to prevent it." Blashfield's Cyc. of Automobile Law, Permanent Ed., § 1615, page 7; Demarco v. Gober, 19 La.App. 236, 140 So. 64.

■ Appellee makes the point that Crow was violating the law by driving the truck 40 miles per hour and that to this speed could be ascribed the proximate cause of the collisions. The point is not well taken. The truck was not loaded. It could legally be operated in excess of 35 miles per hour at the time and place of the accident. The Highway Traffic Regulatory Act (No. 21 of 1932), Subsection (c), par. 2, of Rule 4 of Section 3, Title 2, makes it unlawful to drive a truck transporting property in commerce with or without a load of over 6000 pounds at a speed in excess of 35 miles per hour. It is not shown that Crow's truck's weight was in excess of 6000 pounds nor that it was then engaged in transporting property in commerce. We are sure it did not weigh this much.

Whatever else may be said of this case, it is certain plaintiff has not discharged the burden of proof necessary to a recovery.

The judgment appealed from is reversed, annulled and set aside, and plaintiff's suit dismissed at his cost.