ELLIS, Justice.
In this suit plaintiff is seeking to recover damages for the loss of a cow which was struck and killed by the automobile of the defendant on May 13, 1953 at approximately 7 P.M.
The defendant sought to escape liability on the ground that the cow suddenly darted in front of his automobile which allegedly was being driven at a reasonable rate of speed and was struck before he could stop his car or safely avoid the accident, and it was therefore unavoidable without liability on his part. This defense is based upon the following cases: Dunckelman v. Shockley, La.App., 183 So. 52; Campbell v. F. Hollier & Sons, La.App., 4 So.2d 576; Holmes v. Lindsey, La.App., 15 So.2d 89; Fontenot v. Brown, La.App., 53 So.2d 446; Anderson v. Bendily, La.App., 66 So.2d 355; Ware v. Laiche, La.App., 45 So.2d 224.
Defendant further alleged that plaintiff either failed or refused to dim his lights and he was therefore blinded so as to be unable to see the cow, although he applied his brakes as a. result of plaintiff’s blinding lights.
The defendant reconvened and alleged that the accident was caused solely by the negligence of the plaintiff in refusing to dim his lights and thus blinding the defendant and he prayed for a judgment for the damages to his automobile.
The case was duly tried and judgment rendered in favor of the plaintiff in the sum of $135, which the Court found to be the value of the cow. From this judgment the defendant has appealed.
It is shown by the record that at or near 7 P.M. on May 13, 1953 a number of plaintiff’s cattle were on Highway 338 proceeding in a northerly direction in the proximity of Judson-Church in Livingston Parish, Highway' 338 being a black-topped country road. As a church meeting was being held the plaintiff went in his car to drive these cattle off of the road, and when he got there some of the cattle had already turned into a lane diagonally across from and on the opposite side of the road from the' church, however, there were still some 25 or 30 head in the hig'Jiway going north toward the lane which leads to the west.
The plaintiff testified that as the cows were moving off the road he drove off of the road and stopped his car “157 measured *144 yards” from the point where the defendant struck the cow. It is also his testimony that due to the way the road curves his lights were pointing to the northeast, whereas the defendant was coming south, and it was plaintiff’s testimony that his lights could not have blinded defendant at any time.
■It is shown that there were quite a number of cars coming to the church and quite a few were already parked. The accident occurred 27 yards from the church door. It is plaintiff’s testimony that the defendant was going fast but he did not fix a definite speed.
Plaintiff definitely established by disinterested witnesses at the church that there were IS or 20 head of cattle in the road at the time of the accident and that the accident happened 20 to 27 yards from the church and that there, were a number of cars parked around the church at the time which some witnesses fix at approximately 7:30 P.M. It is shown also that cows were accustomed to run at large in Livingston Parish. Plaintiff’s witnesses fix the speed of the defendant’s car at from 30 to 50 miles per hour.
There is some conflict as to whether the particular cow that was killed was in the road with the other cows or came up out of the ditch, but under the other facts in the case, such a fact would be immaterial. In the present case it is shown that there were anywhere from 15 to 30 cows in the road, which under defendant’s testimony he did not see until approximately the moment he struck the cow. His only excuse was the bright lights of plaintiff’s car but it must be remembered that plaintiff was parked 157 yards or 471 feet from the point where the defendant struck and killed the cow. There is no reasonable excuse for the defendant not having seen this big bunch of cows moving along on the highway, and immediately bringing his car under such control that he could prevent striking any one of these cows.
As to the value of the cow, the testimony is to the effect that it was worth from $120 to $200, however, the District Judge apparently accepted the testimony of an experienced cow man who fixed the value of $120 to $150, and by splitting the difference between the two ' figures arrived at $135.
There is no manifest error shown in the judgment of the District Court and it is hereby affirmed.