On the original hearing in this case, the absence of an appeal bond was noted ex officio and the Court, on its own motion, dismissed the appeal. Defendants, appellants, have filed an application for rehearing in which it is alleged that a cash bond in the sum of $200 had been deposited with the Clerk of the district court in due time after the appeal had been taken and the appeal had been perfected, but through inadvertence the Clerk had failed to file his certificate to the effect that the cash bond had been furnished, in the transcript of appeal. A proper certificate, signed by the Clerk of the district court, is attached to the application for rehearing and appellants further ask that the appeal be now reinstated and that this Court proceed to render judgment in the case. Counsel for appellee has addressed a letter to the Clerk of this Court in which he acquiesces in the request that is made. In view of the premises there seems to be no reason why appellants' request should not be granted and accordingly it is now ordered that the judgment herein rendered on October 8, 1941, dismissing the appeal, be and the same is hereby avoided, set aside and annulled and it is further ordered that the said appeal be now reinstated on the docket of this Court, the case to be proceeded with and determined on the merits.
The claim that is presented is one for damages in the sum of $150 for the killing of a mule.
In his petition plaintiff alleges that at about 5 o'clock in the afternoon of April 19, 1940, his mule was run into on a public gravelled road in the Parish of St. Landry by a Chevrolet pickup truck belonging to the defendants, F. Hollier Son, and being driven by one of their employees who was at the time engaged in the course and scope of his employment. The place of the accident is stated as having been about one mile northwest of the village of Whiteville, where the plaintiff has his farm. *West Page 577 
He avers that just before the accident one of his employees had driven several head of stock and cattle from out of his pasture which is located on the north side of the road and that as they passed through the gate they turned east and were walking near a ditch along the north side of the highway. He sets out further that the mule which was run into was the last to leave the pasture, that it followed the same course as the others and had already gone about fifty feet east on the road when it was struck by the truck which was travelling west, going at a fast and dangerous rate of speed said to have been approximately fifty miles per hour.
Plaintiff avers further that at no time did any of his stock or cattle cross the road which is about twenty-four feet wide at that point and that beyond their presence along the ditch on the north side, there was nothing to obstruct the truck driver's view or impede his safe driving to the south side of the road. On information and belief he alleges that at no time did the driver attempt to change the course of his truck but continued to hold to the north side of the road despite the fact that the stock and cattle were on that side and at no time did he reduce its speed until he collided with the injured mule. Negligence is therefore charged against the driver, first, in driving at a dangerous rate of speed and in not reducing it on observing the presence of several head of cattle and stock on the side of the highway and, secondly, in not changing the course of the truck from the north to the south side of the road in order to try to avoid the accident.
The defendants while admitting that on the date alleged in plaintiff's petition, their truck, which was being driven by their agent, John Miller, accidentally struck plaintiff's mule, particularly deny the negligence that is charged against the driver of their truck and set out in their answer that he had already passed beyond all the stock and cattle that were walking leisurely along the north side of the road when all of a sudden this mule darted through the gate leading from plaintiff's field on that same side and began to run across the highway; that the driver of the truck, confronted with the emergency which presented itself, attempted to swerve to his left to avoid an accident whereupon the mule stopped sharply and turned about-face and was struck on the right rear leg as he did so. Defendants aver further in their answer that plaintiff has a pasture back of his field adjoining the highway on the north in which he keeps his stock and cattle; that there is a gate in the fence which separates the two and another gate opening on the public road from the field and that the accident to his mule resulted from the negligence of his employee who opened both gates and stood inside of the field on the east side of the gate opening on the road instead of being on the west side of this gate, on the road, from where he could have directed the course of the mule instead of permitting it to bolt across the road into the path of the approaching truck.
The case went to trial on these issues in the district court and resulted in a judgment in favor of the plaintiff. The trial judge found that the truck driver was negligent in driving too fast under the conditions existing on the road at the time and in not keeping a proper lookout. He condemned the defendants to pay damages in the sum of $125 for the value of the mule which had to be killed after having had its leg broken.
In the truck with the driver, at the time of the accident, was Philip Hollier, one of the members of the defendant partnership. He was called as a witness by plaintiff for cross-examination and stated that outside of the several head of stock and cattle which were on the north side of the road and which they had just passed, there was nothing else to impede the progress of the truck which was travelling west at a rate of about 38 or 40 miles per hour prior to the accident and it had slowed down when the driver applied the brakes on seeing the mule just before it was struck. The only persons he saw on the road near that point were two men facing them coming from the west. The negro who was attending the mule was standing by the gate. He stated further that the mule came through the gate on to the highway and about-faced, by which, we understand, it turned sharply around in the road. At that moment the driver swerved the truck as much as he could to his left but the bumper nevertheless struck the mule on the right hind leg. Mr. Hollier estimates that they had already passed the other cattle and stock on the road from 60 to 75 yards.
The man who was attending the mule is a young negro named Finley Jefferson. *West Page 578 
In addition to being one of plaintiff's tenants he also works for him as a yard boy. He testifies that he was driving the mules, horses and cows from plaintiff's property on the north side of the road to a lot which adjoins his house which is situated on the south side. The distance on the road from one gate to the other going from the field west to the road on the east is from three to four acres. He had driven them all from the pasture to the field on the north side of the road with the exception of this one mule. The others were all travelling east on that side of the road. He says that he had already shut the gate and was standing on the road when the accident happened. The mule had already gone about twenty steps east from the gate when it was struck. He was somewhat indefinite with regard to the point on the road itself where the mule was at the moment but states that it was near the ditch. The truck, he says, was going pretty fast, about fifty miles an hour, and never tried to dodge the mule. All the other cattle and stock were further up the road, about a half an acre east from where the mule was when it was struck. This witness says that there were two other men on the road besides the two Mr. Hollier saw who were coming from the east facing the truck. In explaining how the mule happened to be struck on its right hind leg he seems to be a bit confused and practically admits that it "wheeled around and was going back towards the left side" which we take to mean to the north or towards that side of the road from which it had come out of the gate.
Hardy Raney and Albert Oneal, both colored, and, like Jefferson, tenants of the plaintiff, claim to have seen the accident also. These are the two men Jefferson stated were on the road besides those Mr. Hollier saw. They both state that they were walking on the south side of the road about an acre west of the gate from out of which the mule came on to the road. Their testimony isn't very impressive. They both agree on the fast speed of the truck but differ on other matters. One of these for instance is that regarding where Jefferson was at the time of the accident and another, the place where the other mules and cattle were on the road. Oneal, it is to be particularly noted, places them on the south side, contrary to the testimony of all the other witnesses. They are vague and evasive also in their answers to questions concerning the movements of the mule that was struck, especially as to its ever having attempted to cross the road.
Lloyd Savant, Jr., a white man, also a tenant of the plaintiff, testified that he saw the accident and gives quite a detailed account of how it happened. This witness, according to his own testimony, had assisted Finley Jefferson in driving the stock and cattle from the back pasture to the extent that he opened the gate between the field and the pasture to let them go through. The field, he says, is about two acres distant from the road and he was about an acre further in the field proper. That is the point from which he viewed the accident and it is doubtful whether he could so plainly see all that he claims he did. He contradicts himself by stating at one time that the mule was struck some ten or fifteen steps west of the gate opening on the road, and at another by stating that it was struck as it "went out of the gate." In another instance he states at one time that Finley Jefferson was leaning on the gate at the time the accident happened and at another that he was about fifteen steps inside the field. Again in another particular he is clearly in error as he states that the mule was struck on its left side on the back foot, whereas it does not seem to be disputed that it was struck on the right rear leg.
The foregoing constituted all the testimony submitted by the plaintiff pertaining to the actual happening of the accident itself.
The defendants produced a witness by the name of Pierre Vedrine who evidently was one of the two parties seen on the road by Mr. Hollier and who, with the other, was some seventy or seventy-five steps west of the gate through which the mule passed to come on the road. He was walking east and therefore had a good view of the scene of the accident. His testimony is to the effect that the mule came up to the gate but didn't go through just at the moment. It backed some ten or fifteen steps in the field and started forward again, in a race. At that precise time the truck wasn't hardly at any distance away and the collision took place right at the gate. Whilst on direct examination he seems to state that the mule was struck before it turned around, which would make his testimony on that point different from that of Mr. Hollier, it is observed that on cross-examination he *West Page 579 
states that "it turned around at the time it was struck" which would be in corroboration of Mr. Hollier's statement. At any rate he is positive that the mule came running out of the gate in the path of the approaching truck and that the driver attempted to swerve to his left in an effort to avoid striking it.
The party who was walking with Vedrine on the road is a young man whose name is Ortego. He was not called as a witness for the reason, as we take it from Vedrine's testimony, that he is "tongue-tied" and speaks very indistinctly. In fact he states that he does not speak well enough to appear before Court.
John Miller, who was driving the truck, testifies that he wasn't going faster than 35 miles an hour; that he had safely passed the drove of mules and cattle walking along the embankment of the ditch on the north side of the road and the first thing he noticed afterwards was this mule which evidently had come through the gate and jumped in front of the truck. As it was headed south or towards the left of the front of the truck, he first swerved to his right, but just at that moment it turned right around so he veered quickly to his left in an attempt to pass behind it but was unable to do so before the bumper of the truck struck it on the right hind leg.
From a careful consideration of all the testimony in the case relating to the actual occurrence of the accident, we are led to the conclusion that the plaintiff has not sustained the burden of proving the negligence charged by him to the driver of the truck upon which he seeks to recover damages from the defendants. We are of the opinion rather that the preponderance of the evidence tends to show that the accident was an unavoidable one caused by the sudden darting of the mule through the gate and its appearance on the road almost in the path of the approaching truck before the driver saw it and could take steps to avoid striking it. The speed of the truck was not excessive at the moment, as it had already safely passed the drove of cattle and stock which was leisurely winding its way eastward on the north side of the highway some two or three hundred feet beyond the gate through which it had emerged from the field. The truck driver might well have assumed that that was the entire drove and that there would not be another mule lagging that far behind.
Whilst both Mr. Hollier and Mr. Miller frankly admit that they were not looking in the field nor did they notice that the gate was open, they cannot very well be said to have been negligent in that respect as all that the law requires of the driver of a car is to keep a proper lookout on the road ahead of him which the driver in this instance was doing. If there was negligence on the part of anyone, it would seem rather that the man charged with the duty of seeing these mules driven safely across the highway was not very attentive in letting this last mule stray from the drove and run through the gate on to the road in face of an approaching truck.
We are careful to keep in mind at all times the great weight which attaches to the findings of fact by the trial judge but in this case we find ourselves constrained to disagree with the conclusion reached by the learned district judge who decided the case in favor of the plaintiff and it becomes necessary for us to reverse the judgment appealed from.
It is for the reasons stated now ordered that the judgment appealed from be avoided, reversed and set aside, and it is further ordered that there be judgment in favor of the defendants and against the plaintiff dismissing the latter's suit at his costs.