9 So.2d 657

**STATE ex rel. DENNY v. MEMBERS OF CADDO PARISH DEMOCRATIC EXECUTIVE COMMITTEE (PARISH EXECUTIVE COMMITTEE) et al.**

No. 36856.

Aug. 25, 1942.

James T. Jeter and Donald C. Dickson, both of Shreveport, for plaintiff-appellant.

Herold, Cousin & Herold and Ralph E. Halliburton, all of Shreveport, amici curiae.

E. W. & P. N. Browne, of Shreveport (S. P. Love, and Wellborn Jack, both of Shreveport, of counsel), for respondents-appellees.

ROGERS, Justice.

The object of this suit is to obtain the annulment of the ruling of the Caddo Parish Democratic Executive Committee (Parish Executive Committee) sustaining the protest filed by Samuel P. Love against the candidacy of the plaintiff, James A. Denny, for nomination by the Democratic Party as one of the judges of the First Judicial District Court. Plaintiff also seeks to compel the committee to order his name placed on the ballot as a candidate for such nomination in the primary election to be held on September 8, 1942. Love objected to Denny's candidacy on the ground that Denny failed to file his notice of intention to become a candidate in the manner and within the time prescribed by Act 46 of 1940, which is the Primary Election Law.

The First Judicial District Court for the Parish of Caddo is presided over by four judges who have qualified as candidates for the Democratic Nomination in the coming primary election to succeed themselves. After sustaining the objection of Love to the candidacy of Denny and refusing to accept Denny's notification and declaration, the Caddo Parish Democratic Executive Committee (Parish Executive Committee) adopted a resolution declaring that the four incumbents were the duly qualified candidates of the Democratic Party to succeed themselves as the Judges of the First Judicial District Court.

On motion of the plaintiff, Denny, the incumbent judges recused themselves in the case on the ground of interest and appointed J. F. McInnis, Judge of the Twen-

ty-Sixth Judicial District Court to hear and decide the controversy. On August 15, 1942, the case was regularly taken up by Judge McInnis for trial on the exceptions and on the merits. On the same day, for reasons orally assigned, Judge McInnis overruled all the exceptions but the exception of no cause or right of action, which he sustained. Judge McInnis recalled the alternative writ of mandamus and dismissed plaintiff's suit. The judgment was read, signed and filed, plaintiff's motion for an appeal was granted, and the appeal was made returnable to this Court on Wednesday, August 19, 1942. The original record was filed in this Court, as required by law, on Tuesday, August 18, 1942, and the case was immediately ordered fixed for hearing for Monday, August 24, 1942. On that day the case was argued by counsel representing the parties, briefs were filed in their behalf, and the case was submitted to the Court for decision which, under the fifth paragraph of Section 28 and paragraph (e) of Section 86 of Act 46 of 1940, the Court is required to render within twenty-four hours.

We find no error in the ruling of the Caddo Parish Democratic Executive Committee (Parish Executive Committee), nor in the judgment of Judge McInnis sustaining the ruling.

The first complaint urged by Denny before the Committee, in the court below, and now before this Court, is that Love is without any right to object to his candidacy, since Love was neither a qualified elector, nor a member of the Committee, nor was he joined in his objection by a member of the Committee.

There is no basis for plaintiff's complaint. Under Section 11 of Act 97 of 1922, the former Primary Election Law, only a person who filed his application to become a candidate or a member of the committee was given the right to object to the candidacy of any person. In Section 28 of Act 46 of 1940, the new Primary Election Law, "any qualified elector" is also given the right to make such an objection.

In support of his complaint, Denny urges the Court to construe the words, "any qualified elector, and any member of any committee calling a primary election," so as to require that a member of the Committee filing an objection must be joined in the objection by a qualified elector. Giving the statutory provision that construction, Denny concludes: "The only person who could file an opposition would be a candidate or any qualified elector and a member of the Committee."

Denny argues that as the Legislature in enacting the statute used the word "and" before the words "any member of any committee," instead of the word "or", it follows that the person objecting to the candidacy of another must be not only a qualified elector but also he must be joined in his objection by a member of the Committee. The language of the statute does not admit of any such construction. The statute does not require that if the person who objects is a qualified elector he must be joined also in his objection by a member of the Committee, nor if the person

who objects is a member of the Committee that he must be joined also in his objection by a qualified elector.

Section 11, the corresponding section in Act 97 of 1922, the former Primary Election Law, restricts the right to object to the candidacy of any applicant for the nomination by a political party to another applicant for the same nomination, or to a member of the Committee calling the election. Act 46 of 1940, the New Primary Election Law, added "any qualified elector" to the class of persons previously granted the right to object to the candidacy of any person seeking to enter as a candidate in a party primary election. The meaning of the statute is clear. The construction which Denny seeks to place upon the statute, if accepted as correct, would lead to an absurd and impractical situation. When it is considered that a member of the Committee calling a primary election is required as a prerequisite of membership to be a qualified elector, it necessarily follows that the words "any qualified elector" and "any member of any committee calling a primary election" refer to separate and distinct classes of persons and that the wording of the statute grants to both these classes of persons the right to object to the candidacy of any person filing his declaration or notification as such.

The record shows that Love is a qualified elector, is a member of the Democratic Party, and that he has been certified as a candidate of the Party for election as a member of the Caddo Parish School Board.

The next and final complaint urged by Denny is that the Caddo Parish Democratic Executive Committee (Parish Executive Committee) and the court below erred in holding that his notice of intention to become a candidate as a judge of the First Judicial District Court was not timely and properly filed.

As shown by the allegations of plaintiff's petition, as well as the testimony in the record, notices of candidacies for judge of the First Judicial District Court expired at midnight on August 2, 1942. At 4:30 o'clock in the afternoon of August 2, 1942, Denny deposited his notice of intention to become a candidate and a check for $100 in the postoffice in the City of Shreveport. Immediately thereafter the papers were placed in postoffice box No. 206, which is the box in which J. H. Mayfield, Secretary of the Committee, receives his mail. The papers were actually received by Mayfield on the morning of August 3, 1942. Plaintiff alleges his declaration or notification was properly made out and that it was filed according to information furnished him by the Acting Chairman of the Committee, Moise H. Levy, and the Secretary of the Committee, J. H. Mayfield, and according to notices appearing in the local newspapers.

In Section 28 of Act 46 of 1940, the Primary Election Law, it is provided that any objection made to the candidacy of any person must be made in writing and must be filed with the Chairman or the Secretary of the Committee within five days after the last day allowed by law for

the filing of notifications of intention to become a candidate. But, in Section 33 of the Legislative Act, which deals only and particularly with the method of filing notices, deposits, etc., with a Party Committee, it is provided that whenever in the statute provision is made for the filing of any notice, deposit, objection, protest, list of commissioners, or any other paper with any Party Committee or officer, the notice, deposit, objection, protest, list of commissioners, or other paper shall be filed with the Chairman of the proper Committee; that if the Chairman is not available, or absents himself, or can not be found, or if for any reason he refuses to accept the paper or deposit, the person offering to file the paper or deposit may file it with the Secretary of the Committee; that if the Secretary is not available, or refuses to accept the paper or deposit, or if he can not be found, then the paper or deposit may be deposited in the United States mail, at some point in Louisiana in an envelope properly registered, stamped and addressed to the Chairman of the Committee, and such deposit in the mail shall be deemed a proper filing of such paper or deposit as of the date when so placed in the mail. The statute further provides in the next paragraph that the failure of the Chairman of the Committee to receive the paper or deposit shall not prejudice or deprive a person of any rights given him thereunder, provided he complies with the conditions set forth in the preceding paragraph.

The mere reading of Section 33 of Act 46 of 1940 leaves no room for doubt that a person desiring to become a candidate in a party primary election must file his intention to become such a candidate and the required deposit with the Chairman of the Committee calling the primary. The section permits the filing to be made with the Secretary of the Committee only when the Chairman is not available, absents himself, can not be found, or for any reason he refuses to accept the notice of intention and deposit. The section provides for the sending of notice of intention and deposit by registered mail to the Chairman of the Committee, but only in the event both the Chairman and the Secretary of the Committee are not available, can not be found, or refuse to accept the notice of intention and deposit. The Section does not provide for the sending of the papers by mail to the Secretary of the Committee in any event. Nowhere in his petition does the plaintiff allege that either the Chairman or the Secretary of the Committee refused to accept his papers, or that either of them absented himself, or could not be found, or for any reason either of them was not available for the purpose of receiving the papers. Neither does plaintiff allege in his petition that he forwarded his papers by registered mail, or that he addressed the envelope containing the papers to the Chairman of the Committee.

In the proceedings before the Committee on the objection filed by Love to the candidacy of Denny, which, according to the petition, are a part thereof, it is shown that Dolph G. Frantz, the Chairman of the Committee, recused himself and that Moise H. Levy was the Acting Chairman.

In support of his contention that his papers were timely filed, plaintiff relies on the information which he says was furnished him by Levy, the Acting Chairman of the Committee, and by Mayfield, the Secretary of the Committee, and in accordance with the notices appearing in the local newspapers.

The record of the proceedings before the Committee, which also forms a part of the record in this case, shows that Denny never presented his papers to Levy, Acting Chairman of the Committee, although he knew that Levy was at all times available for that purpose and would have received the papers if they had been presented to him. The record further discloses that Denny, accompanied by a Mr. Dougherty, called at the home of Mayfield, the Secretary of the Committee, at about two o'clock in the afternoon of August 2, 1942, the last day fixed for the filing of notice of candidacies for judge of the First Judicial District Court, and that Denny at that time had in his possession his declaration of candidacy properly prepared and also a cashier's check for $100 to cover the filing fee as fixed by the Committee. Denny asked Mayfield if he would accept his declaration and deposit and say nothing about their filing to Levy, the Acting Chairman, to the newspapers, or to any one else. Mayfield very properly informed Denny that he could not accept the papers under those conditions; that if he accepted the papers and had them in his possession, they would form a public record which any interested person was privileged to examine. After consulting with Dougherty,

Denny for some unexplained reason of his own, decided not to file the papers with Mayfield and left shortly thereafter taking the papers with him. About an hour later, Dougherty called Mayfield on the telephone and asked him for the number of his postoffice box, which Mayfield gave him. Dougherty then asked Mayfield if he would accept the papers for filing if they were sent to him by mail. Mayfield stated that he would do so if the papers were mailed before midnight of August 2, 1942, and that the postoffice mark on the envelope showed that fact. In his testimony before the Committee, Mayfield, who is not a lawyer, explained that the reason he told Dougherty he would accept the papers was because it was his understanding it was his duty to accept them, and that the question of his right to legally do so was a matter for the Committee to decide.

It is difficult to understand the reasons prompting Denny to desire that his declaration to become a candidate should be concealed until after the expiration of the deadline fixed for the filing of similar declarations by other candidates. Various reasons suggest themselves. One reason which is suggested in the brief filed on behalf of Love is that the purpose of Denny was to insure that he would be the only candidate opposing the present incumbents for the office of judge of the First Judicial District Court. Be that as it may, there is no good reason why Denny could not have filed his papers with Mayfield at the time he called at Mayfield's home on August 2, 1942. Mayfield would have accepted the papers if they had been offered to him for

that purpose. His testimony in the record makes that clear. The apparent purpose of Denny in calling on Mayfield in company with Dougherty was to file his papers with Mayfield only if Mayfield would agree to treat the filing as confidential and to withhold from the Chairman of the Committee and from the newspapers and from everyone else the fact of such filing. When Mayfield refused to do this, Denny left Mayfield's home without filing or offering to file his papers with Mayfield, preferring instead to forward them to Mayfield by the regular mail.

The contention of Denny, that his declaration of candidacy and deposit was filed according to the information furnished him by Levy and by Mayfield and as contained in certain news articles appearing in local newspapers to the effect that declarations of candidacies might be mailed provided they were postmarked before midnight of August 2, 1942, is wholly insufficient to justify the irregular method employed by him in filing or attempting to file his papers.

As shown by the record, Mr. Denny has been practicing law in this State for twenty-eight years. He admitted in his testimony before the Committee that he had read portions of Act 46 of 1940—presumably those portions of the statute prescribing the method for filing declarations of candidacies for the office of judge of the First Judicial District Court. Denny therefore knew, or should have known, the requirements exacted by the Primary Election Law of persons who intended to offer themselves as candidates for office in pri-

mary elections. His right to become a candidate was created by that law and could be exercised only upon the terms and conditions prescribed by the law.

Denny knew the time for filing his declaration or notification of candidacy would expire at midnight, August 2, 1942. He knew that the provisions of the Primary Election Law required that his papers should be filed before that time with the Chairman of the Committee, if available. He also knew that if the Chairman were not available, he could file his papers with the Secretary of the Committee. He made no attempt to file his papers with Levy, the Acting Chairman of the Committee, who, admittedly, was available. Conceding for the purpose of discussion, as argued on behalf of Denny, that there is no provision in the Primary Election Law for the filing of a declaration or notification of candidacy with an Acting Chairman, the fact remains that Denny did not even file his papers with the Secretary of the Committee. He merely made a conditional offer to file them, the condition being that the Secretary would himself violate the law by withholding a public document from public inspection. Failing to obtain the consent of the Secretary to do this, Denny then sent his papers to the Secretary, not to the Acting Chairman, by unregistered mail, knowing full well that the papers would not be received by the Secretary until the following day, which was after the expiration of the deadline fixed for filing the papers. Denny's argument that the delivery of the papers to Mayfield's postoffice box was a delivery to Mayfield

is not impressive. The law does not provide nor contemplate that delivery to his postoffice box shall be a substitute for the delivery to the Secretary in person.

In the recent case of Villermin v. Republican Executive Committee, 195 La. 1022, 197 So. 743, this Court held that Section 28, relative to the objection to candidacies, and Section 33, relative to the method of filing notices and deposits, etc., of Act 46 of 1940 are mandatory, and that the compliance with their provisions was a prerequisite to the valid filing with the Committee calling the primary election of any notice, declaration or objection of any kind.

Neither Mayfield nor Levy, even if they desired to do so, nor the persons responsible for the items appearing in the newspapers, had any right or power to change or modify the provisions of the Primary Election Law. The statutory provisions are mandatory and the time fixed for the filing of notice is sacramental. It was so declared in the case of State ex rel. Dunshie v. Fields, 164 La. 954, 115 So. 45, where this Court held that notice by the Democratic State Central Committee in issuing the call for a primary election as to the date of filing the notification of candidacy, which allowed one more day additional for the filing thereof than that allowed by the Primary Election Law, did not control over the time fixed in the statute, since the Committee was not given discretion to fix the period for filing notification, nor was it even required, in issuing its call, to give notice when such period begins or terminates.

If the Committee itself would have had no authority to extend the time for filing Denny's declaration or notification, necessarily, neither the Chairman nor the Secretary of the Committee would have any such authority.

With full knowledge of its provisions, Denny failed to comply with the Primary Election Law, thereby deliberately placing himself in a position where he is not, as a matter of right, entitled to have his name appear upon the ballot for the Democratic nomination as judge of the First Judicial District Court. This Court is powerless to extricate him from the predicament in which he finds himself as a result of his voluntary acts.

For the reasons assigned, the judgment appealed from recalling the alternative writ of mandamus and dismissing plaintiff's suit is affirmed at plaintiff's cost.

O'NIELL, C. J., absent.