The suit is to recover the sum of $175, the alleged value of a mare which was killed on January 15, 1940, when the animal was run over by a car driven by defendant's minor son on the highway about two miles west of Kentwood. It is alleged that the accident occurred on account of the negligence of defendant's minor son, Herbert Lindsey, in driving the car at an excessive rate of speed, in a reckless manner, knowing that the brakes and lights on the car were in bad condition.
The defendant admits that his minor son ran into and killed the mare, but denies that his said son was guilty of any negligence. He avers that the accident was due to the negligence of the plaintiff or his agents in driving the animal onto the highway directly in front of the car being operated by his said minor son. The defendant, by way of reconvention, claimed the sum of $191.60 against the plaintiff for damages to his car.
The case was tried before the late Judge Mixon, who died before rendering a decision. By agreement of counsel, the case was submitted to Judge Robert S. Ellis, Jr., who rendered a judgment dismissing the suit of the plaintiff and also rejected the reconventional demand of the defendant. The plaintiff has appealed. As the defendant has not appealed nor answered the appeal, the reconventional demand is not before us.
The accident occurred around seven o'clock P.M. on the highway in front of the dairy barn of plaintiff. Young Lindsey, then sixteen years of age, accompanied by another boy named Hurst, was driving east toward Kentwood. There is a slight incline toward the east in the road at the point where the accident occurred. The animal was pushed or knocked some 40 yards down this incline after being struck, and the car continued on for some 600 feet and went down an embankment and turned over in a ditch. There is a serious dispute as to how the accident occurred, and it will therefore be necessary to give a summary of the testimony of both sides on this point.
Plaintiff testified that his barn fence runs along the north side of the highway, and he first said that he was standing in the road, but later stated that he was standing inside the lot fence when the accident occurred; that the mare was grazing with her head down on the south shoulder of the road about 55 feet from where he was standing; that the car was traveling east at a fast rate of speed, 55 or 60 miles per hour, swerving right and left, and struck the animal on her hind legs. He testified that young Lindsey stated after the accident that if it had not been for his bad lights and brakes the accident would not have happened. The witness denied that he was driving the mare out of the lot onto the highway. We gather from the testimony of this witness that he means to state that the animal was grazing with her head down on the south shoulder of the road and the remainder of her body extending out onto the traveled part of the highway, and that the driver of the car when several feet away from the animal began to swerve his car from one side of the road to the other in an effort to avoid the mare but struck her while she was standing still eating grass on the south side of the road. The witness denied that he had stated in the presence of several persons after the accident that it would not have been so bad if he had not been after the animal and drove her in front of the car.
Odell Holmes, a brother of the plaintiff, testified that he was standing in the barn door and saw the car come over the top of the hill, and when the driver took his foot off the accelerator, the car began back-firing and jumping back and forth, and struck the animal on the opposite side of the road from the barn, as the car was going down hill.
These were the only two eyewitnesses to the accident who testified for the plaintiff. Young Lindsey and his companion Hurst gave very similar accounts of how the accident occurred. They were going to a football banquet in Kentwood and were driving from 35 to 40 miles per hour. As they were passing the Holmes place, one of the boys remarked that he didn't reckon there would be any cows on the road that night. When they got opposite the barn, an animal *Page 91 
darted out into the highway right in front of the car, the car striking the animal, and the driver lost control of the car and did not know what happened after the collision until he got out of the car after it turned over. The boys testified that the plaintiff and his brother came down to where they were getting out of the car and were cursing and threatening them; that plaintiff remarked that it would not have been so bad if he had not run the mare in the road.
It is obvious from the two accounts of the accident that if the accident occurred in the manner the two boys in the car claimed that it occurred there would be no liability on the part of the defendant. If the animal ran or was driven out from the lot immediately in front of the oncoming car going at a speed of 35 or 40 miles per hour, the accident was unavoidable. When an animal suddenly darts in front of an automobile traveling at a reasonable rate of speed on the highway, and the animal is struck before the driver can stop his car, or swerve it so as to avoid the accident, the accident is said to be unavoidable, and there is no liability on the part of the driver or his employer. Campbell v. F. Hollier Sons, La.App., 4 So.2d 576.
Both sides rely on certain facts and circumstances to prove that the accident occurred in the manner claimed by their respective sides. On the part of plaintiff, he points to the fact that the car driven by young Lindsey went over 600 feet after striking the animal, indicating that it was traveling at a rapid rate of speed. But the car was going down a long incline and if, as young Lindsey claims, he was dazed by the impact and lost control of the car, there would be nothing unusual in the car coasting down the road that distance even though it was going only 35 or 40 miles per hour when the collision occurred. Another point stressed by plaintiff is the alleged admission of young Lindsey made after the accident that he could have avoided the accident had not his brakes and lights been in bad condition. He denied making the statement, and the testimony as to whether or not he did make such a statement is so conflicting that we are unable to say that he did make it. In any event, the preponderance of the evidence shows that the brakes and lights on the Lindsey car were not in bad condition.
To bolster up the defendant's contention that the animal ran or was driven out of the lot onto the highway in front of the car, several witnesses were offered by the defendant to prove that plaintiff made the statement after the accident to some four or five persons that it would not have been so bad if he had not been after the mare and ran her out into the highway, or words to that effect. While this evidence may not be sufficient to prove that plaintiff ran or drove the animal out of the lot in front of the car, it is sufficient to cast some doubt on the account given by plaintiff and his brother to the effect that the animal was grazing on the south shoulder of the road, particularly in view of the fact that it is rather difficult to see why young Lindsey would have struck the animal if it was on the shoulder of the road, even though he was going faster than he claims.
The plaintiff bore the burden of showing by a preponderance of the evidence that the accident was not unavoidable but was due to the negligence of the driver of the car which struck the animal. This we think, as the trial judge must have thought, he has failed to prove with that degree of legal certainty necessary to form the basis of a judgment in his favor.
For these reasons, the judgment appealed from is hereby affirmed; cost of the appeal to be paid by appellant.