LOTTINGER, Judge.
This is the second time that this matter has come before us. The first time, the appeals' taken in'this case and the companion casé'Of Jeffie B. Smith versus Joe-Smith, which were consolidated for the purpose of trial and-appeal, were dismissed because of the 'fáilure of the Judge ad hoc to-sign the *724 judgments rendered in each case. See La.App., 79 So.2d 504, 505.
The petition in each case alleges that the defendant, Joe Smith; on. October 9, 1952, at approximately l,l,o’clopk p. m. was driving a 1949 Ford in an easterly direction towards Bogalusa on 'the Franklinton-Bogalusa highway when, upon reaching the community of Sheridan, he ran into and killed a bull belonging to plaintiff Jeffie B. Smith and a cow belonging to Lucius T. Simmons. Negligence in each suit is charged against the defendant in the following particulars:
. ■ “1.. In driving at an excessive, reckless rate of speed..
“2. In. driving without keeping1 a proper lookout ahead.
“3. In not driving so he could stop within range of his headlights.
“4. In having improper lights.
“5. In having bad brakes.
“6. In driving while in an intoxicated condition.
“7. In not having proper control of ■ his car.
"8. In not driving with proper regard for the terrain.
“9. In failing to take proper measures to avoid the collision.”
Exceptions of vagueness and no right and no cause of action were filed in each suit and overruled by the trial judge. Subsequently, answers were filed in the‘nature of a general denial and containing also an alternative plea of contributory negligence on the part of each plaintiff.
The trial judge rendered written reasons for judgment which read, in part as follows :
“The evidence and pleadings show" that the accident occurred at Sheridan, which is approximately half-way between Franklinton and Bogalusa jn Washington Parish. At this point the paved two-lane highway runs approximately East and West.. The Pine Highway enters this, highway from the north between Galloway’s Store on the east and a garage or other building on the west. All the buildings 1 at this point are on the north side of the Boga-lusa-Franklinton Highway.
“At approximately 11:00 o’clock P. M. while Joe Smith was returning to Bogalusa from Franklinton after attending a football game on October 3, 1952, he ran into and instantly killed both animals. It is the contention of plaintiffs, Jeffie B, Smith and Lucius T. -Simmons, that the sole and proximate cause of the accident was, among other things, the excessive and reckless rate of speed at which the automobile was being driven, driving without keeping a proper lookout ahead; in hot driving so he could stop within the range of his headlights; and, driving while in an intoxicated condition. The defendant denies this and it is his testimony that he was operating his car at a normal rate of speed between 45 and 50 miles per hour; that he had his car under control; that he was observing where he was going; that his lights and brakes were in good working order; and that he applied his brakes as soon as he saw the animals, but that he was too close upon them to avoid the accident. In other words, it is the defendant’s contention that he was in no way negligent but that the accident was unavoidable due to the suddenness with which the ‘cow and yearling’ came onto the highway from the dark shadows of a building.
“It was also the contention of defendant, Joe Smith, that he was alone in the car at the time of, the accident and there were no other eye witnesses. However, this is seriously contradicted by the testimony of Mr. and Mrs. Claude Thomas, who did not see the actual impact when the car hit the animals, but saw the car before it came to a stop and immediately thereafter saw two colored men come upon the highway from down the bluff where the *725 car came to rest. ■ This was also corroborated by Mr. Osborne Galloway, who. heard the collision, looked out his bedroom window and saw two colored, men coming out from under the bluff , immediately .after the accident occurred, as well as, the testimony of Mrs. Galloway, .all disinterested witnesses.
“Although t.here is some variance as to the exact distance the car traveled after hitting the animals, it suffices to say that the distance was some 300 to 400 feet before the automobile finally came to rest off the highway after carrying both animals on top of the car, one down bluff and the other the entire distance.
“There was also testimony to the effect that the car traveled some 10 or . 12 feet after leaving the highway and. jumped over two or three slabs of concrete measuring four feet wide and eight feet long. All of this, coupled with the fact that there were parts of the inside of the animals scattered up-, on the highway and on the window of the store building some 150 feet from the point of impact, would indicate that the car was traveling at a very high rate of speed.
“Although defendant testified that his lights were in good order and burning bright, he did not see the cow and bull yearling until they were both in the middle of his right lane, and about-20 feet in front of his car. At another point in his testimony he states that -the animals came from his left,or the north side of the highway around the garage or store-room building. The store building has gas pumps in front of it and at least three lanes for servicing cars ‘between the buildings and the paved portion of the highway. The garage or storeroom is to the west of the store building. There appeared to be no obstruction of view and certainly had defendant been keeping a proper lookout, he would have seen the cows in sufficient time to have brought his car under control had he not been driv-ving at such, an .excessive and.reckless . :.rate of speed. ' ¡ , .
“ 'The' negligence of a driver colliding' with an animal loose on the1 public highway should be tested and determin- ■ ed by the application o.f .the rule of due care under the ci'rcufnstances. . The -fact that a-motorist ran-into an animal -■which-was in! plain v-iew.on a public highway, where there was ample room for safe passing, has been .held to show a lack o'f due care on the -part of the operator of the motor vehicle.’ Blash- . fields Cyclopedia of Automobile Law, Section 1615 Volume 3, Page 7.
“It is not contended .that there was a' stock ..law prohibiting cattle running at large, and although defendant contends that the .animals dashed onto the highway in front of his automobile, which would be a legal defense, the physical facts and the preponderance of testimony by disinterested witnesses convinces the Court that the sole and proximate cause of the accident was the excessive and reckless rate of speed at which défendarit was driving and his failure to keep a proper lookout and not being able to stop within the range or view of his headlights. There certainly was ample room for safe passing to the left of the animals had defendant been traveling at a safer rate of speed or had he been keeping a proper lookout, since the point of impact was in the middle of .his right lane of traffic.
■ “This conclusion 'of liability on the part of defendant is reached without the necessity of deciding whether or not there was another occupant in defendant’s automobile at the time of the accident' and should have been produced as a witness, or whether or'not defendant was driving while in an intoxicated condition'.”
■ There is no question but that the trial judge’s findings with respect to the physical condition' of the road and surrounding premises at the location of the accident are correct.' We do not believe, however, that *726 he was warranted from the evidence adduced in concluding that the charges of negligence levelled,against the .defendant.were proved to that degree of certainty required by law.
The only 'eyewitness to the accident is the'’defendant' hifííself and he, on cross-examination, ;gaVe'the following version of its occurrence: On the night in question he had been to a-ballgame¡and uvas .proceeding in the direction of Bogalusa1 at' approximately 11 o’clock p. m.' Just before the accident, he was proceeding at a speed of between 40 and 50 miles per hour. His bright lights were 'on -and were in good condition. He first saw the two animals when they ran onto the .road from his left at a distance of about 20 feet ahead of him. The defendant testified, that as soon as he saw the cows, he applied his brakes, (which were in good condition), but was unable to avoid the accident and .the cows were struck in his right .lane of travel. According to the defendant, one of the cows was carried by the car a distance of about 100 feet be-for the car came to a stop. He stated very definitely that he was alone in the car at the time, and that he had not been drinking that night. He admitted having been found guilty of “negligent driving” in a criminal proceeding resulting from the accident.
On direct examination, the defendant repeated that he wás proceeding at less than 50 miles pet''hour'when he first saw the animals some 20 feef ahead of him and to his left, tie repeated that he 'was alone, that he was ¡not. drunk and that his lights and brakes were . good. He stated again that he attempted to stop but -did not have time as the cows had suddenly appeared from behind the shed on his left. .(This shed is referred to by the trial judge in his reasons for judgment set opt above.). The defendant stated, that one. of the cows was knocked to the right of his, ear in the spot where it was first hit and that the other fell across 'the hood of the automobile and fell off after the car - stopped. Gn re-efoss-examination, he repeated 'that his lights were on bright and that he first saw the cows when they were running ahead of him some 20 feet away in the left lane of travel.
As ¡will be.- seen .from the above quoted reasons for. judgment of the trial :court, the latter-was of’the opinion that the proximate cau-se:of the accident was the excessive, rate of Speed at’which the-defendant was traveling. As stated above,'the only eyewitness to the-accident was the'defendant himself and we-do not believe that:the fecord contains sufficient physical evidence to warrant our concluding that’ he testified falsely when he said that he was not going over 50 miles per Kojin We 'do not think' that 'the fact alone that he traveled some 300 feet after the collision is sufficient proof that he was traveling at a’dangerous rate as the evidence indicates that the, highway he was traveling on was on á downgrade and further indicates that he lost control of his car after the impact and that his car went down • an "embankment. Furthermore,' we are impressed by the fact that one A. M. Cesario, Jr.,'testified that he repaired the vehicle at a cost of only $38.50. - While' it is true that this man made use of second hand parts and performed the labor himself,- we do' not think that the impact could have been too great-with the resulting damage'to'tlie car being so small. Considering the fact that the animáis were1 only 20 feet away from him when they'ran'into the road from his left, we do not think that the speed he was traveling wa,s a proximate:cause of the accident. Under, the facts and circumstances as found in this record, if defendant., ha.d been traveling' at the rate .of 20.or 30..mil'es 'per hpur, .which he had a perfect right to do, he could, not have avoided ,thc accident. • ■ ■ , .. ,-
The trial judge did not pass upon whether or not the plaintiff was intoxicated, but we think it pertinent to point out, without goiñg-into unnecessary-detail, that the record is completely barren of any proof whatsoever to the effect that the defendant was drunk. The' appellee, in-his brief, makes much of the fact that" there' was another person in the car with the defendant who was not called to testify;- -The -fact of' the matter is, though, that the record fails to show that there was a passenger in the car with1 the-defendant. Not only did he deny this' ’on several occasions, but none of the persons who testified with respect to this *727 supposed passenger actually stated that they had seen him in the car. .All that they could testify.to was that they saw another negro, with the defendant on the highway after the accident had occurred.
Though it is with reluctance that we" reverse a factual finding" by a- trial judge, we feel constrained to do so here. Negligence in cases of this sort must be proven by a preponderance of the evidence and we feel that the plaintiff has failed to do so. See Holmes v. Lindsey, La.App., 15 So.2d 89.
Eor the reasons assigned, the judgment appealed from is reversed and plaintiff’s suit dismissed at his cost. ...
Judgment reversed.