125 So.2d 787 (1960)
Axion McGEE
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE CO.
No. 166.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 18, 1961.
Certiorari Denied March 13, 1961.
*788 Daniel J. McGee, Mamou, for plaintiff-appellant.
J. Burton Foret, Ville Platte, for defendant-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This suit was instituted by plaintiff to recover damages for the loss of his cow which was struck and killed by an automobile being driven by Floyd Pitre. Defendant was the public liability insurer of the Pitre automobile. After trial on the merits, judgment was rendered for the defendant, dismissing plaintiff's suit and plaintiff has appealed from that judgment.
The accident occurred about 8:30 p. m. on May 5, 1959, on a graveled road which runs north and south between the towns of Mamou and Chataignier, in Evangeline Parish. The road at the scene of the accident was narrow, being about 20 feet in width, with ditches running along each side of the road. Each of these ditches was 3 or 4 feet wide, and fences were located along the outer edges of these ditches. The total distance between the two fences which ran on each side of the road was 26 to 30 feet. At the time the accident occurred it was dark and the road was wet.
The evidence establishes that as Pitre was driving his father's automobile in a northerly direction he observed plaintiff's dark red cow walking across the road from east to west. He applied his brakes, causing the car to skid to his left, or to the west side of the road, and the right front portion of the car struck the head and left shoulder of the cow, killing the cow almost instantly. The point of impact was about in the center of the road. The automobile was being driven at a speed of about 35 miles per hour when the driver first saw the cow.
Pitre, the driver of the insured vehicle, was the only eyewitness to the accident. He is a deaf mute and his testimony was taken by deposition. He testified that he was about three car lengths from the cow when he first saw it "coming from the ditch," that he applied his brakes when he was about two car lengths from the cow, and that he then skidded to his left to the place where the accident occurred. He further testified that his car lights illuminated the road for about seven car lengths, but when asked why he did not see the cow sooner he answered "Dream," apparently meaning that he had his mind on something *789 else. He later explained that the reason why he did not see the cow sooner was that there were holes scattered all over the road, and that he was watching the road and dodging the holes. The cow apparently walked from the ditch on the east to the center of the road, a distance of about 10 feet, before the collision occurred. Pitre testified that the cow was not moving fast, but was walking slowly, and that there were no other vehicles on the road at that time.
The road on which this accident occurred was not a public highway on which livestock are prohibited from roaming at large by LSA-R.S. 3:2803, and there was no local stock law in effect in that area. This was open range country and cattle were frequently found on this road. Many, but not all, of the residents of that area penned up their cattle at night. Pitre lived near the scene of the accident and was familiar with that road. He testified that he had often seen cows "all over" this road during the day, but had never before seen one on the road at night.
In his written reasons for judgment, the trial judge stated that, "Much stress is placed on the testimony that he kept his eyes down on the road. The court feels that this driver could not be expected to jeopardize his own safety by scanning the countryside for animals." The trial court then concluded that the driver of the automobile was not negligent and that he did what any reasonable and prudent driver would do under the circumstances. We agree with the trial judge's findings of fact, but we feel that he erred in concluding that Pitre was not negligent under the established facts.
A motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and ordinarily the driver of an automobile is negligent in driving at a rate of speed greater than that in which he could stop within the range of his vision. Louisiana Power & Light Co. v. Saia, 1937, 188 La. 358, 177 So. 238; Geoghegan v. Greyhound Corporation, 1954, 226 La. 405, 76 So.2d 412; McCandless v. Southern Bell Tel. & Tel. Co., 1960, 239 La. 983, 120 So.2d 501.
In this case it is apparent from the testimony of the driver of the automobile that he did not see the cow as soon as he should have seen it, and that if he had been exercising ordinary care and prudence in observing the road ahead of him, he would have seen the cow in ample time to have avoided running into it. If the holes in the road were of such a nature that it was necessary for the driver to devote all of his attention to these holes in order to dodge them, then he was negligent in driving at such a rate of speed that he was unable to avoid running into objects which may have appeared in front of him within his limited range of vision.
Defendant contends that the cow suddenly darted in front of the automobile, and that the driver was not negligent because the accident was unavoidable. It is well settled, of course, that when an animal suddenly darts in front of an automobile traveling at a reasonable rate of speed on the highway, and the animal is struck before the driver can stop his car or swerve it so as to avoid the accident, the accident is said to be unavoidable, and there is no liability on the part of the driver or owner of the automobile. Campbell v. F. Hollier & Sons, La.App.1941, 4 So.2d 576; Holmes v. Lindsey, La.App.1943, 15 So.2d 89; Fontenot v. Brown, La.App.1951, 53 So.2d 446; Anderson v. Bendily, La.App.1953, 66 So.2d 355; Simmons v. Smith, La.App.1956, 86 So.2d 723.
The evidence in this case, however, establishes that the cow did not suddenly dart in front of the Pitre automobile. On the contrary, the driver testified that the cow walked slowly from the ditch to the center of the road, and that the only reason why he did not see the cow in time to avoid the accident was that he was dodging holes in the road and had his mind on something else.
*790 In Geoghegan v. Greyhound Corporation, supra [226 La. 358, 76 So.2d 413], the evidence showed that the driver of the defendant vehicle noticed cows "on the shoulder of the highway coming into the roadway," and that the cattle "walked" or "stalked" onto the road. The Supreme Court, in concluding that the driver of the vehicle was negligent, said:
"In the present case the animals walked or `stalked' onto the highway, and did not suddenly dart in front of a bus."
In West v. Southern Farm Bureau Casualty Ins. Co., La.App., 124 So.2d 321, 323, the plaintiff sought to recover damages for the death of a cow under facts similar to those presented here. We held that plaintiff was entitled to recover in that case, because "according to the facts as found, the cow in question did not dart out suddenly in front of Mr. Manuel's vehicle."
We conclude that in this case the cow did not suddenly dart in front of the Pitre automobile, that the accident was not unavoidable as contended by defendant, and that the sole and proximate cause of the accident was the negligence of Pitre in failing to keep a proper lookout and failing to see the cow in time to avoid running into it.
Defendant specially pleads contributory negligence, contending that plaintiff was negligent in permitting his cow to roam upon a heavily traveled road. Appellee asks that this court adopt a rule that "whoever releases an animal on the highway, in open range country, or releases the animal at a place where it is likely to go on an open range highway, * * * does so at his peril insofar as recovering for the value of an animal killed by an automobile on the said highway." Counsel for appellee concedes that such a rule would be contrary to the present established jurisprudence of this State. See Ware v. Laiche, La.App.1950, 45 So.2d 224, 226. Whether such a rule of law should be adopted is a matter which concerns the legislature, not the judiciary. Under the jurisprudence of this State, plaintiff was not negligent in permitting his cow to roam on the public road where this accident occurred, and we conclude that there is no merit to defendant's plea of contributory negligence. Plaintiff, therefore, is entitled to recover from defendant for the loss of his cow.
Plaintiff valued the cow which was killed as a result of this accident at $250. The experts who testified at the trial, however, fixed the value of the animal at from $190 to $225. We conclude that the cow had a value of $200 at the time of the accident, and that plaintiff is entitled to recover that amount from defendant.
For the reasons herein assigned, the judgment of the trial court is reversed, and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff and against defendant, condemning defendant to pay unto plaintiff the principal sum of $200, with legal interest thereon from date of judicial demand until paid, and for all costs of this suit, including the costs of this appeal.
Reversed and rendered.

On Application for Rehearing.
En Banc.
PER CURIAM.
We cannot consider the application for rehearing herein submitted by the defendant-appellee because it was not filed timely.
The judgment herein was rendered on December 19, 1960, and notice was given of it the same day by mailing a copy thereof to counsel. Able counsel for the defendant-appellee mailed from Ville Platte his application for rehearing to this court in Lake Charles on December 31st, but through no fault of his and rather through a miscarriage of the mails (since ordinarily there is a one-day mail service between the two cities) this application was not received until January 6, 1961, after the judgment *791 became executory. See LSA-R.S. 13:4446 subd. E, as amended by Act 38 of 1960: "Judgments of all appellate courts become final and executory upon the expiration of the delay for applying for rehearing if no application therefor has been filed timely."[1] (Italics ours.)
By Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1960), it is provided that applications for rehearing "must be filed in quintuple copies on or before the fourteenth calendar day after such delivery [to counsel of notice of judgment] in person or by deposit in the U. S. mail." (Italics ours.)
The judgment in this case was rendered on December 19, 1960 and deposited the same day in the United States mail. The fourteenth day after such date of delivery by deposit in the mail of the notice of judgment was Monday, January 2, 1961, which was a legal holiday, since January 1, New Year's Day, had fallen on Sunday. LSA-R.S. 1:55(4). Thus the delay was extended through Tuesday, January 3rd. See LSA-R.S. 13:4446, subd. C, as amended by Act 38 of 1960: "If the last day of any delay allowed in this Section [which provides for applications for rehearing in the appellate courts] falls on a legal holiday or half-holiday, the delay shall be extended through the next day which is not a legal holiday." Therefore January 3rd was the last day of the delay within which the application had to be filed, and the judgment became executory if no application for rehearing had been "filed" before then.
The present application for rehearing was mailed on December 31st, but through miscarriage of the mail it was not delivered to this court until January 6th, after the expiration of the delay within which applications for rehearing must be filed. Thus, the present application for rehearing is not timely and cannot be considered if, as we hold, the date of its "filing" is determined by the date that the application is delivered into the actual custody of the clerk rather than by the date it was mailed.
"In practice the term ["filed"] has a well defined meaning, signifying delivered to the proper officer and by him received to be kept on file, or in his official custody; delivered into the actual custody of the officer designated by the statute, to be kept by him as a permanent record of his office," 36A C.J.S. p. 396. (Italics ours.) It is uniformly held, therefore, that a pleading is not filed when it is placed in the mail until it is actually delivered to the clerk's office, even though mailed early enough to have apparently assured timely delivery in the ordinary course of the mails. 16A Words & Phrases Verbo File, Sub-heading Delivery by mail, p. 107 et seq.; 36A C.J.S. p. 397. See also State ex rel. Denny v. Members of Caddo Parish, etc., 201 La. 483, 9 So.2d 657; Sweet v. Brown, La.App. 3 Cir., 125 So.2d 261. Thus it has been held, without differing opinion so far as we could find, that applications for rehearing required to be filed by a certain date are not filed timely if received thereafter, even though mailed early enough to have reached the clerk's office in the ordinary course of the mail but delayed through no fault of the movant's attorney and solely by a miscarriage of the mails. State ex rel. Attorney General, 185 Ala. 347, 64 So. 310. See also Hewitt v. International Shoe Co., 115 Fla. 508, 155 So. 725.
The Louisiana Court of Appeal Rule XII, above noted, accords with the applicable statutory and constitutional provisions pertaining to filing of applications for rehearing in appellate courts.
*792 Under LSA-R.S. 13:4446, subd. B, as amended by Act 38 of 1960, "Applications for rehearing in the courts of appeal must be filed on or before the fourteenth calendar day after notice of judgment has been given, as required by Article VII, Section 24, of the Constitution."[2] Art. VII, Section 24, as amended by Act 561 of 1958 when ratified as a constitutional amendment by the people in November of that year, pertinently provides: "Notice of all judgments shall be given to counsel of record; and the court shall provide by rule for the giving of such notices."
Prior to the 1958 amendment, this latter constitutional provision contained an additional sentence immediately following that quoted above, namely: "No delay shall run until such notice shall have been given." This former constitutional requirement was interpreted to mean that in the First and Second Circuit Courts of Appeal the delay for filing an application for rehearing did not commence to run until the notice of the judgment was "given" to counsel, i. e., received by him. Mid-State Tile Company v. Chaudoir, 228 La. 634, 83 So.2d 654; Lacaze v. Hardee, 199 La. 566, 6 So.2d 663; Newsom v. Caldwell & McCann, La.App. 1 Cir., 51 So.2d 393.
The 1958 constitutional amendment's deletion of this former requirement thus validates appellate court rules that the commencement of the delay is fixed by the date the notice of judgment is mailed rather than the date it is received. Cf., Lacaze v. Hardee, La.App. 2 Cir., 7 So.2d 719. (Thus the commencement of the delay is now fixed by the date of mailing the notice of judgment to the attorneys, even though the application for rehearing must be actually received by the court within this delay period.) However, whether the delay within which to apply for a rehearing commenced to run on the date of mailing or, contrariwise, on the date of receipt is not determinative in the instant case. For in either event, the application was "filed" too late in this court, if indeed the date of its filing is governed by the date it is received by the court rather than by the date it is mailed to it.
For the foregoing reasons, the application for rehearing filed herein by the defendant-appellee is held to have been filed after the delay expired, and it will not therefore be considered.
NOTES
[1] LSA-R.S. 13:4446 was specifically not repealed or affected by Act 15 of 1960, adopting the Louisiana Code of Civil Procedure, LSA-C.C.P. See Act 15 of 1960, Section 51 LSA-C.C.P following article 5251. Article 2167 of the Code provides that the appellate court judgment becomes executory when "the delay for applying for a rehearing has expired and no application therefor has been made." (Italics ours.)
[2] LSA-R.S. 13:4446 was one of the few procedural statutes not repealed by the adoption of the Louisiana Code of Civil Procedure, Act 15 of 1960. See Footnote One above. However, this statutory provision is not in conflict with the codal enactment on the same question, Art. 2166, which provides that "In the courts of appeal the delay for applying for a rehearing commences to run on the day after notice of the judgment has been given by the court to counsel of record in the case."