302 So.2d 45 (1974)
Felton L. GABBARD, Plaintiff-Appellee,
v.
John P. ARENO, III, Defendant-Appellant.
No. 4693.
Court of Appeal of Louisiana, Third Circuit.
October 24, 1974.
Baggett, Hawsey, McClain & Morgan by William B. Baggett, Lake Charles, for defendant-appellant.
Planchard & Thompson by Glen A. James, Sulphur, for plaintiff-appellee.
Before FRUGÉ, MILLER and WATSON, JJ.
*46 MILLER, Judge.
Defendant John P. Areno, III appeals the judgment awarding plaintiff Felton L. Gabbard $235 for personal injuries and $700 for property damage suffered by his 1968 pickup truck. The damages resulted from a collision between the truck and a horse which escaped from defendant's custody. Defendant contends the trial court erred in finding him negligent, and alternatively in holding plaintiff free from contributory negligence. We affirm as to both issues.
On the overcast, dark night of October 13, 1973, some time after it stopped raining, Gabbard was driving home from work. He lived three miles from his work and drove the same route every working day for the past 23 years. Gabbard was driving west on Louisiana Highway 108, a concrete paved highway, and the trial court held that he was driving at his stated speed of 45 mph in a 60 mph zone.
Gabbard had his lights on low beam and noticed a slow moving or stopped oncoming vehicle flash its headlights. He placed his lights on high beam and then on low beam to show that his lights were properly on low beam. When the flashing lights continued, Gabbard took his foot off the accelerator and placed his foot on the brake. He did not recall applying his brakes. He noted at that point that the oncoming vehicle was half on the shoulder and half on the south edge of the pavement, and concluded there must be a wreck in the vicinity. On studying the area around the oncoming car carefully, he could not see an obstruction (and there was none). He concluded the motorist was in trouble and decided to stop and offer assistance. About that time and while 200 feet from the front of the oncoming car, the right front of Gabbard's truck was struck by a horse which was "trotting" (Tr.96) or "running in a panic" (Tr.119) directly toward Gabbard on and along the extreme north edge of the wet grey pavement. The horse was dun colored which is defined as a variable color averaging a nearly neutral slightly brownish dark grey.
About fifteen minutes before Gabbard struck the horse, one of his fellow workers, G. P. Landry, was proceeding in the same direction. He saw two horses cross the highway near defendant Areno's home. By applying his brakes, he barely avoided hitting the horses. He signaled to the following motorist by flashing his brakelights and he too narrowly missed striking the horses. Landry drove into Areno's driveway to advise Areno the horses were loose. Areno, a visiting friend, and Landry immediately proceeded in Landry's pickup to attempt to catch the horses. The friend kept the only flashlight and was posted at Areno's driveway to guide the horses into the pasture. The impact occurred some 800 feet east of the driveway. Areno rode on the outside of Landry's pickup truck and Landry drove east to overtake the two horses. One horse was entirely off the road along the fence, and the other was trotting east along the extreme north edge of the pavement (on the extreme outer edge of the westbound traffic lane).
Landry and Areno saw Gabbard approaching when he was 750 to 1000 feet away. Landry turned his headlights off and on at a rapid rate to warn the oncoming motorist. The right front of Gabbard's pickup truck struck and was struck by the right front of the trotting horse when Gabbard reached a point about 200 feet from the front of Landry's pickup truck. The impact caused the hood of Gabbard's pickup truck to buckle upward and obscure Gabbard's vision. Gabbard was stunned and did not apply his brakes. His truck rolled to a stop some 153 feet (as stepped off by the investigating officer) before coming to rest in the shallow north ditch. Landry moved forward and turned to the left to direct his headlights on Gabbard's damaged truck.
Calcasieu Parish Police Jury Ordinance No. 803 prohibits horses and livestock from roaming at large in the area *47 where this accident occurred. The motorist's duty to observe stock on a stock free highway is not as great as when traveling upon a road where stock may lawfully roam at large. Brignac v. Pan American Petroleum Corporation, 224 So.2d 84 at 87 (La.App. 3 Cir. 1969). The burden is placed on the stock owner to prove himself free from negligence by showing that he has taken every precaution expected of a reasonable, prudent individual to prevent livestock from leaving their confines and roaming at large. Fortenberry v. McCoy, 233 So.2d 320 at 324 (La.App. 1 Cir. 1970).
The trial court correctly held that defendant Areno failed to establish his freedom from negligence. The gate near his barn was found open following the accident. Although defendant had a good fence and good gates, he cannot avoid the implication of negligence when a gate is found open and his animals are roaming the highway. This is the situation contemplated in placing the burden on the keeper of animals to absolve himself from negligence. The gate, fence, and enclosure are within the care, custody, and control of the person responsible for livestock.
There is no manifest error in the trial court's conclusion that the horses escaped through the open gate. The gate was Areno's responsibility and he failed to prove freedom from fault.
Defendant contends that Gabbard was contributorily negligent in failing to see what he should have seen and in traveling at an excessive rate of speed under the circumstances. We find no manifest error in the trial court's rejection of these contentions. See Craker v. Allstate Insurance Company, 259 La. 578, 250 So.2d 746 (1971); Gautreaux v. Pierre, 254 So.2d 476 (La.App. 3 Cir. 1971).
It was established that the headlights of the oncoming vehicle (Landry) were flashing at a rapid rate, and defendant contends that Gabbard should have stopped or slowed to avoid the accident. As the trial court noted, Gabbard had no way of knowing that the flashing lights on his left were to direct his attention to a horse trotting straight toward him on his right. The legs (and front) of the dark grey horse blended with the dark grey color of the wet pavement. Gabbard's headlights were properly on low beam and his attention was being directed to a problem on his left rather than to the area from which the trotting horse was approaching. No one was in the area near the horses attempting to signal Gabbard.
Although this horse did not dart from the side of the road, he was "trotting" or "running in a panic" straight toward plaintiff's vehicle at the extreme right edge of plaintiff's lane of traffic. The flashing lights to plaintiff's left did not direct his attention to his right. Considering the color of wet concrete as related to the color of the horse, and the other stated factors, the holdings in Holmes v. Lindsey, 15 So.2d 89 (La.App. 1 Cir. 1943) and Anderson v. Bendily, 66 So.2d 355 (La.App. 1 Cir. 1953) are applicable. From the motorist's point of view, the accident was unavoidable.
Areno argues that Gabbard should have seen the horses because Landry and another driver saw them in time to avoid them. Landry testified that both horses ran across the highway in front of him and he barely missed hitting them. The following driver was warned by Landry's flashing brakelights. These facts are not remotely related to the situation confronting Gabbard.
Defendant argues that Gabbard was speeding based upon the damage sustained by Gabbard's pickup truck and the distance traveled by Gabbard after impact. The damages sustained by Gabbard's pickup truck are shown by photographs in evidence. These damages do not appear excessive for an impact with a trotting horse which was moving straight toward Gabbard's slowing vehicle.
*48 The fact that Gabbard did not apply brakes after impact accounts for the 153 foot roll after impact. There is no manifest error in the trial court's conclusion that plaintiff was traveling 45 mph when he first saw the flashing lights and decelerated from that point until impact while preparing to stop to render assistance. The trial judge specifically rejected the 50 mph estimate of plaintiff's speed at impact.
The trial court judgment is affirmed at defendant's costs.
Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting).
My review of the record indicates that the trial court was manifestly erroneous in determining that plaintiff was not contributorily negligent.
Plaintiff was negligent in at least two particulars: first, failing to see what he should have seen; and second, traveling at an excessive rate of speed under the circumstances. Defendant and Landry did everything possible to call plaintiff's attention to the situation as he approached them. Plaintiff acknowledged that when he was approximately 750 feet away he saw the lights begin to blink on and off. Plaintiff testified that he never saw the horse, despite the fact that the horse was trotting down the edge of his lane of travel while he traversed at least several hundred feet.
This is not a situation where an animal darts from the side of the road in front of a motorist, as in Holmes v. Lindsey, 15 So.2d 89 (La.App. 1 Cir. 1943) and Anderson v. Bendily, 66 So.2d 355 (La.App. 1 Cir. 1953).
Here, the animal was in the road, the motorist was traveling too fast under the circumstances and did not see what he should have seen. He was negligent. Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412 (1954). The horse was in plaintiff's lane of travel for a long distance, and, while one might have some difficulty in seeing a horse at night, plaintiff had the benefit of not only his headlights but the headlights which were blinking on and off on the Landry vehicle.
This is not a situation where plaintiff was faced with an emergency and chose the wrong course of action. Rather, this is a situation where plaintiff should have seen the horse in the road or, even if he did not see the horse in the road, he should have slowed his vehicle substantially and thus avoided the danger. Contrary to the majority's conclusion I do not find evidence that plaintiff significantly slowed his vehicle.
Both the witness Landry and another driver who was following him saw the horses and avoided them.
It is clear to me that plaintiff did not slow his vehicle in the face of an obvious danger. The investigating police officer estimated plaintiff's speed at the time of impact at 50 miles per hour. The pictures of plaintiff's truck and the distance the truck traveled subsequent to the accident corroborate this estimate. Plaintiff's estimate of 25 or 30 miles per hour is in sharp contrast with the physical facts of the accident.
The truck was stipulated to be a total loss for valuation purposes.
There is the suggestion that plaintiff's attention was riveted on the lights of the Landry truck. However, plaintiff was not entitled to focus his entire attention on the Landry truck and proceed ahead at 50 miles per hour for several hundred feet. He testified that the lights did not blind him. Plaintiff should have seen the horse. His own testimony is that prior to hitting the horse he could "... see all around the truck," (meaning Landry's vehicle). Again speaking about Landry's vehicle, he *49 said, "... I could see it very plainly." but he added: "I never saw the horse before the impact."
I find manifest error in the trial court's conclusions that plaintiff kept a proper lookout and that plaintiff was not traveling at an excessive rate of speed. I would conclude that plaintiff was contributorily negligent, and I respectfully dissent.