OVERTON, J.
 

 Mrs. Annie O. Kneipp departed this life in Baton Rouge, La., on February 4, 1930, leav
 
 *414
 
 ing a husband; Henry Kneipp;'one/who.alleges that he'is her son by a former marriage/ Oharles J. Rupp, and a valuable estate.
 

 Mrs. Kneipp died testate, leaving a will, in olographic form, bequeathing all of her property to her husband, with the following exceptions: The rents, after the payment of the repairs on the property and the expense, connected with it, to go to Jane, the minor child of Charles J. Rupp, and $5 monthly, as long as the property lasts, to the student’s fund of the testatrix’ church. Two or three small personal articles she left to Jane or to her church, and another to a friend. She left nothing to Charles J. Rupp, though referred to him in an uncomplimentary manner in. what may be termed a codicil to the will, giving instructions as to the disposition of her body. She named no testamentary executor.
 

 Some two months and a half following the death of the testatrix, Henry Kneipp presented the will for probate, and, as the testatrix had not named a testamentary executor,. Kneipp applied for appointment as dative testamentary executor. The will was admitted to probate.
 

 Thereafter Rupp filed an opposition to the appointment of an executor. In this opposition he alleges that he is the son of the testatrix, having been bom of the marriage of the latter with Charles C. Rupp, who died. many years ago, and that he is the sole surviving heir at law of the testatrix. He also alleges therein that the legacies in favor of Henry Kneipp and Jane Rupp encroach upon his legitime, and that these dispositions should be reduced to the amount reserved to him by law, which is one-tbird of the estate of the testatrix.
 

 The grounds of opposition to the appointment of a testamentary executor are stated ■ to be that the legacy in favor of Rupp’s daughter.'wiirbe'administered ’by Rujop, as natural tutorlof the’child-, 'or by'some'other ’ qualified tutor or tutrix; that the legacy in favor of the student’s fund of $5 a month' is null, and on behalf of his child he reserves the right to attack it; and that there are no' debts due by the estate, except such as he is willing to assume. Rupp further alleges that, in the event an executor should be appointed, - notwithstanding the foregoing, he desires to accept his mother’s succession without benefit of inventory, and to be sent into possession' of the one-third interest therein, - secured to him by law.
 

 Several exceptions, were tiled to this opposition, . including a plea of prematurity. ■ Thereafter Rupp filed another opposition in which he reaffirmed the allegations made in his opposition to the appointment of an exec--, utor, and alleged, in the event his first opposition should be overruled, that, - as he is the only son and child of the testatrix, he is entitled over all other persons to the appointment, of executor of her estate.
 

 The exception- of prematurity, which-alone it may be deemed advisable to consider,. seems to rest upon the ground that Rupp is without interest in this succession to oppose the appointment of an executor or to apply for the executorship until he shall have first ; succeeded in reducing the legacies to the disposable portion of the estate. This position,however, is not well taken. It suffices that one in Rupp’s position, who is omitted frpm the will, establish his right and intention to' reduce the legacies, so as to secure his legitime. Such a person is not called- upon to await the actual reduction of the - legacies. .This would involve delays and cause complications in the appointment of an executor to the injury of the succession.
 

 • It cannot be questioned that, if Rupp is the legitimate son of the testatrix, which we
 
 *416
 
 think, as we shall see in a moment, the record discloses, then it is certain that he is a forced heir of the testatrix, and, as such, is entitled to his legitime, in the absence of a- disinherison for one of the causes permitted by law, made in the form of a last will and testament, as required by the Civil Code, which it is not questioned was not done. .Civil Code, arts. 1493 and 1617 to 1621, inclusive. Therefore all of the essentials appearing for the securing by Rupp of his legitime the plea of prematurity is not well'founded.
 

 Rupp does not press his objections to the appointment of an executor in this court. It is clear that one should be appointed. This being so, the only question arising is, Who should be appointed, Rupp or Kneipp?
 

 The first question to be decided, in passing on that question, is one, the decision of which we have already anticipated, that is, the legitimacy of Rupp.
 

 The only evidence that we find in the record that has any tendency to show that the testatrix and Charles C. Rupp, the alleged father of Charles J. Rupp, were not married, is that, in the body of the license, under which the testatrix was married to Kneipp, her maiden name alone is given with the prefix “Miss” attached to it, and it is so given in the return on the license, showing the performance of the marriage, which is signed by the testatrix in her maiden name, though, of course, without the prefix, and the further fact that no license was found in New Orleans authorizing the marriage between the testatrix and Charles C. Rupp, where the marriage was supposed to have occurred, and no license was produced at all.
 

 The fact that the license was issued for the marriage to Kneipp in the maiden name of the testatrix is not at all strange, for, in law, she still retained her maiden name, and bore Rupp’s name, if married to him, as a matter of custom. The fact that the prefix “Miss” is attached to the maiden name of the testatrix may have been well the result of an error of the officer issuing the license, for her maiden name alone, without any prefix, may have been given to the officer, and he, in error, might have attached the prefix “Miss,” the error naturally being followed by the officer in making the return, unnoticed by the testatrix. That the attaching of the prefix “Miss” to the name of the testatrix is an error is supported by the fact that some years later, in passing a deed by notarial act, signed by the testatrix and Kneipp, she is described as “Mistress Annie O. Kneipp (née Hespe), widow by first marriage of Charles Rupp, now married to and living with Henry Kneipp.” The fact that no marriage license was found in New Orleans cannot be characterized even as strange. The marriage may have occurred in some parish adjoining the parish of Orleans. In this connection, it may be observed that the second marriage of the testatrix did not occur at her domicile in the parish of East Baton Rouge, but in an adjoining parish. Moreover, the search was not such in New Orleans as to make it by any means conclusive that no license issued there for the marriage of the testatrix with Rupp, due to the condition of the records, which was occasioned by long use, at the supposed period of issuance. Therefore, aside from the fact that it has been repeatedly held that a license is not necessary to the validity of a marriage, we think that the failure to produce one is not entitled to great weight.
 

 That she (the testatrix) was married to Charles O. Rupp is supported by evidence that, prior to her marriage to Kneipp, she was known and considered as the Widow Rupp by her acquaintances, and opponent and his sister, now deceased, were known and regarded
 
 *418
 
 as her children. That opponent was the child of the testatrix is supported by cards from her, conveying birthday and holiday greetings, signed “Mother and Mr. Henry” (that is, Henry ICneipp); also by an affidavit, made by her to enable opponent to procure a passport, in which she declares that she is opponent’s mother, and by the fact that she reared him as her child under circumstances indicating that he was her legitimate child. Moreover, the testatrix was devoted to her church, and was of a character unlikely to make her the mother of illegitimate children.
 

 The presumption of legitimacy is one of the strongest known to the law. The incapacity of heirs, which involves their legitimacy, is not presumed. Civil Code, arts. 952, 950; Succession of Curtis, 161 La. 1045,109 So. 832. With this evidence before us, we must hold that the legitimacy of Rupp appears.
 

 Rupp contends that,' being the son of the testatrix, he is entitled to the dative testamentary executorship in preference to Kneipp, whose only claim to any part of the estate arises by virtue of the last will of the testatrix. There seem to be only two provisions of law, relating, expressly, to the appointment of a dative testamentary executor. These are articles 1678 and 1679, the first providing that: “If the testator has omitted to name a testamentary executor, or if the one named refuse to accept, the judge shall appoint one ex-officio,” and the second providing that: “The testamentary executor, thus ap-. pointed by the judge, and called the dative testamentary executor, is bound to give security in the same manner as curators of vacant successions.” However, in the Succession of Gusman, 36 La. Ann. 299, the court, without discussion, and apparently after accepting its pertinency as unmistakable, brought to bear article 1042 of the Civil Code, relative to the appointment of administrators, and, on the authority of article 1042 of the Code, held that the Code “has affirmed that the beneficiary heir, of age and present, shall be preferred to every other person for that office [referring to the dative testamentary executorship].” The resort had is not unreasonable, and the ruling is now probably a part of the practice in the state. We adhere to the ruling.
 

 However, it is urged that Rupp is not a beneficiary heir, because in his pleadings, opposing the appointment of an executor, he has accepted the succession of his mother without benefit of inventory, the Code declaring that a beneficiary heir is one who accepts a succession under the benefit of an inventory regularly made. Civil Code, art. 883. A reference to the pleadings shows a mere willingness and intention to accept the succession without the benefit of inventory, urged as a ground for defeating the appointment of an executor, and not an actual acceptance. Therefore Rupp, notwithstanding his pleadings, remained in position, should they not avail him by defeating the appointment of an executor, to accept the succession with the benefit of inventory, for his declaration was one of mere willingness and intention to accept without the benefit of inventory as distinguished from an actual acceptance. In the Succession of Sloane, 12 La. Ann. 610, and cited in the Succession of Gusman, supra, it was held .tfiat the term “beneficiary heir” included one who may accept with the benefit of inventory, as distinguished from one who has so accepted. Had Rupp so worded his opposition as to show therein an acceptance of the succession without the benefit of inventory, in an attempt to defeat the appointment of an executor, this would not have prevented him from competing with others, who had accepted with the benefit'of inventory, in the event an
 
 *420
 
 appointment should he found proper. Such was the case in the Succession of Damico, 155 La. 1036, 99 So. 862, and it was there so held. In fact, there is not much difference between that form of declaration and the present, as both are patently made, subject to success in defeating the appointment of an executor or an administrator. Hence we conclude that Rupp has not forfeited his right to apply for the appointment.
 

 It is urged, however, that Kneipp is an heir of the testatrix, he being her universal legatee, and therefore that, having accepted the succession with the benefit of inventory, he has a right to compete with Rupp for the appointment. This contention we must resolve in favor of Kneipp. Omitting the two or three inconsequential articles disposed of by the will, the disposing part of the testament is (to reproduce it here verbatim, for convenience) as follows:
 

 “I will bequeath you [referring to Kneipp] everything I have in 'this world. I want you to take my portion of rent and put it in the bank, every month pay all my expenses and repairs and the balance is for Jane, and $5 five dollars to the student’s fund of my church, the first church of B. R. they can send it to N. O. they know better than I, every month as long as the property lasts. * * * ” Here follows the disposition of the minor articles adverted to above.
 

 It is evident that the testatrix wills the totality of her property, of every description, to Kneipp, subject to certain particular legacies. If we were to follow literally the definition of what constitutes a universal legacy, given in article 1606 of the Civil Code, which defines such a legacy as “a testamentary disposition, by which the testator gives to one or several persons the whole of the property which he leaves at his decease,” it is not unlikely that we would reach the conclusion that Kneipp is not a universal legatee. Jurisprudence, however, has established that a residuary-legatee is a universal legatee. Succession of Burnside, 35 La. Ann. 708; Succession of Fisk, 3 La. Ann. 705. We think that Kneipp is a residuary legatee, and hence may be considered properly a universal legatee. His claim as a universal legatee arises from the first disposing clause in the will and from the fact that, if the remaining legacies should fail, they would go to him by virtue of that clause. Kneipp, being a universal legatee, is an heir. Civil Code, art. 884. Having accepted the succession with the benefit of inventory, he is entitled to compete with Rupp for the appointment. Hence there are two persons who occupy the position of heirs entitled to compete for the appointment. In these circumstances the appointment rests largely within the discretion of the trial judge. Civil Code, art. 1043; Succession of Boudreaux, 42 La. Ann. 297, 7 So. 453; Succession of Chaler, 39 La. Ann. 308, 1 So. 820. We are not prepared to say that Rupp is the more solid of the two, or that the judge has abused his discretion. Besides, it may be observed that the testatrix all but actually appointed Kneipp as testamentary executor. It was he, as appears in the disposing clauses of her will, whom she directed to pay the legacy to her grandchild and the one to the student’s fund of her church. It may be observed also that the judge may have taken into consideration the litigation Rupp expects to institute against the succession. After mature deliberation, we find insufficient reason to disturb the judgment of the trial court appointing Kneipp.
 

 The judgment is affirmed.