## STATE ex rel. ROGERS v. STATE ELECTION BOARD et al.

No. 25590. June 6, 1934.

Rehearing Denied June 19, 1934.

Sylvester Grim and Luttrell & Holland, for plaintiff.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

B. H. Carey, for defendant Will Rogers of Ardmore.

BUSBY, J. This is an original action in mandamus in which the plaintiff, Will Rogers (now a resident of Oklahoma City), seeks to compel the State Election Board to strike or refuse to recognize the notification and declaration of Will Rogers (a resident of Ardmore), who seeks to become a candidate for the democratic nomination for the office of Congressman-at-Large, in opposition to the first-named Will Rogers, who is seeking the same nomination. By agreement of the parties and consent of this court, Will Rogers of Ardmore has been permitted to intervene in this action.

The case in effect presents a contest between two men, one a resident of Oklahoma City, the other a resident of Ardmore, to determine whether the latter may share with the former the privilege of seeking

the same public office under the same name —Will Rogers. The case is presented to us on the pleadings filed and by agreement of the parties, on the original records of the State Election Board as supplemented by a transcript of testimony taken on a hearing before that board. The controlling and undisputed facts are: That the plaintiff is at present the duly qualified, elected, and acting Congressman-at-Large for the state of Oklahoma; that he acquired that office as the nominee of the Democratic party in the election of 1932 and that he ran for the office under the name of Will Rogers; that he seeks to be again nominated by the Democratic party at the primary elections in the current year under the same name; that in accordance with the requirements of the law, chapter 62, S. L. 1933, he presented to the State Election Board on April 2, 1934, his "Notification and Declaration" for the purpose of having his name submitted to the Democratic voters on the official ballot as "Will Rogers."

On April 28, 1934, just before the time for filing as a candidate for party nomination for state office expired, one Will Rogers, or one who also styled himself as Will Rogers, a resident of Ardmore, tendered to the State Election Board his notification and declaration seeking to have his name submitted to the Democratic voters for nomination to the same office which the plaintiff now holds.

On the 3rd day of May, 1934, the plaintiff in this case filed before the State Election Board a petition to strike the filing of Will Rogers of Ardmore, asserting in substance, among other things, that the said Will Rogers of Ardmore had no right to use the name under which he filed for the reason that the Ardmore citizen was commonly and universally known as W. O. Rogers or Oscar Rogers, and asserting, further, that he filed under the name of Will Rogers for the purpose of confusing the voters of the Democratic party. The plaintiff thereby sought to invoke the power or asserted power of the State Election Board to determine as a matter of fact whether Will Rogers of Ardmore was entitled to use the name under which he filed. An answer or response was filed by Will Rogers of Ardmore and upon the issues presented the matter was heard before the State Election Board. That board, upon the testimony produced, decided that the man from Ardmore was sometimes known as Will Rogers and was therefore entitled to 'use the name under which he had filed. But it is not necessary for us to determine this particular feature of the case, namely, the right of the Ardmore citizen to use the name of Will Rogers, because this case turns on another legal point, as hereinafter set out.

In the meantime and on May 2, 1934, one Donald B. Jones, together with more than 100 other duly registered voters of the Democratic party, presented to the defendant, the State Election Board, a petition to strike the filing of the Ardmore Will Rogers on the ground that such filing was frivolous and not made in good faith. This petition was filed pursuant to the provisions of section 1 of chap. 98, Session Laws 1927, the applicable portions of which read:

"Within five days after the expiration of the filing period for state offices, to be voted upon by the state at large, any qualified elector of the state may file a petition with the State Election Board, signed by not less than one hundred duly registered voters of the political party of which the filing has been made, requesting the State Election Board to strike the filing so challenged, upon the ground that such filing is frivolous or not made in good faith. Immediately upon the filing of such petition the State Election Board shall require the person whose filing as a candidate has been challenged, to file, or cause to be filed, with the State Election Board, within ten days from date of notification of the filing of such petition, a petition signed by one thousand qualified voters of the state, duly registered as members of the political party involved in such candidacy, requesting the filing to be allowed and the challenge dismissed, **and such petition presented by such candidate shall contain the post-office address of each signer, and the county precinct in which such signer is a registered voter, and not more than one hundred of such signers shall be from one county.**

"The notification of the filing of any petition challenging the filing of any person as a candidate for the nomination of any office in any political party shall be deemed completed by the sending of a written notice by the county or State Election Board, as the case may be, by registered mail to the person whose filing is challenged at his place of residence as stated in his written filing as a candidate. Should any candidate whose filing has been challenged fail to file proper petition in response thereto, as herein above provided, his filing shall be stricken by the election board with which such challenge is filed, unless in lieu thereof the candidate should deposit with the secretary of the proper election board, the sum of fifty ($50.00) dollars as to county offices or district offices comprised of one county or less; one hundred ($100.00) dollars as to district offices comprised of more than one county and two hundred fifty

($250.00) dollars as to state offices. * * *" (Emphasis ours.)

In accordance with the above-mentioned statutory provisions, notice of the filing of the challenging petition was sent by the State Election Board to Will Rogers of Ardmore by registered mail. The mailed notice was deposited in the post office at Oklahoma City on May 2, 1934, and received by the challenged candidate on May 4, 1934.

By the provisions of the above-quoted statute the challenged candidate, when such a petition was filed, had the option to deposit with the State Election Board the sum of $250 in cash, to be returned to him if he received as much as 10 per cent. of the votes cast at the coming primary election, or file a counter petition containing the signatures of 1,000 duly registered members of the political party whose nomination he seeks, not more than 100 of such signatures to be from any one county. It is further required by the statute quoted supra that such petition shall contain both the **post-office address of each signer and the county precinct in which such signer is a registered voter.**

Will Rogers of Ardmore did not deposit the $250. He did, however, attempt to comply with that portion of the statute authorizing a counter petition or petition for allowance of filing. The counter petition was prepared in the form of a number of separate and distinct units. A portion of the units were filed on May 12th and the remainder on May 14, 1931. The sufficiency of this counter petition was challenged before the State Election Board by Will Rogers of Oklahoma City on a motion to strike the same for noncompliance with the statute. This motion was overruled by the State Election Board, which held that the several units of the petition considered together constituted a substantial compliance with the statutory requirements. The Election Board ordered both names placed on the ballot with the names of their respective home towns after each, so that the voters might distinguish them in casting their votes. It is asserted by the plaintiff and denied by Will Rogers of Ardmore that this ruling on the part of the State Election Board was erroneous.

An examination of the various units of the petition for allowance of filing, considering those filed on May 12th together with those filed on May 14th, discloses that the same contains more than 1,000 signatures when not more than 100 from any one county are counted. Further examination discloses, however, that there are **only 752 names appearing on the counter petition which show anything** other than the post-office address of the signer. Of these 752 a great many fail to disclose the precinct in which the signing parties voters were registered, but on the contrary disclose only the wards in cities where there is more than one precinct to the ward. Considering all of the signatures appearing on the petition, less than one-half of the required number disclose the precinct in which the signing voter was registered. In this respect there was a failure to comply with the statute.

It is contended by Will Rogers of Ardmore, first, that chapter 98, Session Laws 1927, is unconstitutional by reason of the insufficiency of its title, and that therefore his name cannot be stricken from the ballot for failure to comply with the requirement thereof. Second, if the act in question is constitutional, the requirement that the precinct in which the party voter be registered be disclosed on the face of the petition is directory merely and that a failure to comply therewith does not destroy the force and effect of the petition for allowance of filing.

The question concerning the constitutionality of this act was considered and treated in the case of State ex rel. G. B. Fulton v. State Election Board, No. 25591, this day decided, 168 Okla. 446, 33 P. (2d) 800. Briefs in this case were considered in arriving at the conclusion in that case. We therein held that the act in question was constitutional, and the holding in that case will be applied to the case at bar.

This brings us to a consideration of the second contention of Will Rogers of Ardmore, which in substance is that the portion of chapter 98, Session Laws 1927, reading, "such petition presented by such candidate shall contain the post-office address of each signer and **the county precinct in which such signer is a registered voter,**" need not be strictly observed; that the omission of the county precinct in which the signer is a registered voter does not invalidate the signature. It is not contended that the petitions presented to the State Election Board contained the county precincts in which 1,000 signers were registered voters.

The identical question has not been previously presented to or considered by this court. The reason for this statute, how-

ever, is obvious. Its purpose was to require petitions for allowance of filing to disclose on their face the place where the signers of the petition were registered in order that those interested might determine promptly and with certainty whether the persons whose signatures appear on a petition are party voters and as such qualified to sign the same. Bearing in mind that the proceedings contemplated by chapter 98, supra, were for the purpose of determining whether or not a candidate should be permitted to run for a party nomination, it is of paramount importance that only party voters should have a voice in keeping such a candidate on the party ticket, and it is equally important that a method should be provided whereby those interested may promptly and properly investigate the party affiliation of the petition signers who seek to keep a candidate on the ballot. If the information required by the statute is omitted from the petition, it would be far more difficult and require a great deal more time to make an investigation of the petition signers and the party affiliation thereof. In many cases it would be practically impossible to locate and determine the party affiliation of the signers without the information required by law. It seems that, in view of the purpose to be accomplished by this law, the requirements of the act under consideration are salutary and wise statutory provisions. Compliance therewith is not difficult, and we perceive no reason why those who seek to retain their names on the ballot by the method outlined should not comply with those legislative requirements.

In the case of In re Referendum Petition No. 31, 68 Okla. 147, 172 P. 639, this court considered the effect of a statutory provision requiring that those who signed referendum petitions should indicate after their signature their post-office address. It was therein held that the failure to comply with that requirement of the statute was fatal, and that signatures which did not indicate the post-office address of the signer could not be counted. In disposing of the question, we said:

"Besides, the aims of the statute requiring correct addresses of the signers is to enable a protestant of the petition to trace the signer for the purpose of determining his qualification to sign the petition, and when this cannot be done, on account of the procedure adopted here, the statute is not substantially complied with, and the presumption that the signatures were those of legally qualified electors is prima facie destroyed."

While the facts in the cited case may be distinguished from the facts in the case at bar, the principle therein recognized is identical with the principle herein involved. It was required by the statutory provision that each signer of the petition reveal his post-office address in order that he might be traced for the purpose of determining his qualification to sign the petition. In this case we are concerned with a petition which only registered party voters are authorized to sign. Recognizing the additional qualification required of such signers, the Legislature has seen fit to require that the precinct in which such signers are registered be revealed on the face of the petition. This for the obvious purpose of making it possible to trace the signer and determine with facility his qualification to sign the petition. The difference in the statutory requirement in the two cases is due to the difference in the required qualifications of the signers, and the same principle of law is applicable to both.

In the case of In re Referendum Petition No. 35, 78 Okla. 47, 186 P. 485, this court, in considering a similar question in connection with the referendum law, adhered to its former holding and in syllabus 4 announced the law to be:

"Where a petition contains certain signatures with the post-office address or residence omitted from the petition, said signatures are not in compliance with section 3368, Revised Laws 1910, and must be disregarded."

We therefore hold in this case that the purpose of the statute requiring the county precinct in which the petition signer is a registered voter to be indicated on the face of the petition is to enable those who are interested in the procedure to promptly ascertain whether or not such signer was qualified to sign the petition, and that a petition which does not reveal this information on its face is not in substantial compliance with the requirements of the statute, and those signatures appearing on a petition which do not disclose this information cannot be counted in determining the sufficiency of the petition. Applying the rule announced to the case at bar, an examination of the petition discloses that there are less than 752 names on the petition which can properly be counted in determining the sufficiency thereof. The statute required 1,000.

The statute under consideration provided only two alternative methods of destroying the effect of a challenging petition. Neither of those methods has been complied with

by Will Rogers of Ardmore. It is specifically provided by the act that if neither of these authorized methods of resisting a challenging petition is complied with, the filing of the challenged candidate "shall be stricken by the election board." It therefore follows that the name of Will Rogers of Ardmore must be stricken from the official Democratic ballot for the coming primary election.

Another contention of the plaintiff herein is that those units of the petition of Will Rogers of Ardmore presented to the State Election Board on May 14, 1934, were not filed in time and could not be counted. It is pointed out in this connection that, considering only the petitions filed on May 12, 1934, there are less than 1,000 signatures (restricting the number which may be counted to not more than 100 to the county) which show the post-office address of the signers. It is unnecessary for us to pass upon this question by reason of the view we entertain concerning the necessity of complying with the plain provision of the statute requiring the petition to reflect the county precinct in which the signer is a registered voter. In any event, as set out hereinbefore, considering the petitions filed by Will Rogers of Ardmore on both May 12th and May 14th, there are less than the required number of signatures showing proper compliance with the statute.

The statute which is herein approved is designed to and will, to a limited extent, prevent bad faith and frivolous filings. Its effectiveness for that purpose would be materially hampered and greatly lessened were we to excuse a nonobservance of its plain provision. Laws calculated to accomplish such a legitimate result, when enacted in the manner required by the Constitution, and when within the power of the Legislature, will be approved by this court. Their provisions, when reasonable, must be observed, and noncompliance will not be judicially excused.

The plaintiff in this case also points out that the State Election Board, in designating the manner in which his name shall appear on the official primary ballot, has provided that after his name shall appear in parentheses the words "of Oklahoma City." He asserts that there is no authority of law for such a designation and asks that those words be stricken. We do not find any statutory provision authorizing such additional words. Neither do we find any express prohibition.

The purpose of a name is to designate an individual. Huff v. State Election Board, 168 Okla. 277, 32 P. (2d) 920. In designating a particular individual it should also distinguish him from others. To the extent that a name fails to perform this function it fails to serve its purpose. Historically and from the records of this court (State of Okla. ex rel. E. B. Howard v. Reford Bond, John W. Hayson and J. Wm. Cordell, who comprise the State Election Board of the State of Oklahoma, No. 23840, Petition filed July 12, 1932; July 19, jurisdiction denied), we know of one Will Rogers, of more than ordinary national fame as a humorous philospher, writer and actor, who was or may now be legally a resident of Claremore, Okla., and who has numerous friends, acquaintances, and admirers in this state. There is a reasonable probability that the name "Will Rogers" appearing on the ballot without other designation might serve to confuse the identity of the two men, and cause some voters to believe they are voting for Will Rogers of Claremore. Surely, the plaintiff in this case does not seek re-election on the merits of the other man's accomplishments. If he does, then certainly the designation of his place of residence as Oklahoma City is justified to prevent an unwarranted encroachment on the other man's popularity; if he does not, we perceive no just or reasonable ground for complaint on his part to a designation by the election board of his place of residence on the ballot. This may in a measure avoid confusion on the part of the voters. We do not regard it either as a particular political advantage or particular political liability to reside in Oklahoma City. We are informed that the order for printed ballots has already been made. Needless labor would be required to obliterate the designation of the residence of the plaintiff from the ballots. Furthermore, such obliteration might call unnecessary attention of the voters to that particular name on the ballot. It will not be required in this case.

Our decision on this point is prompted by the exigencies of this particular case and is justified in order that confusion of the party voters may be avoided. We do not approve the designation of a candidate's address or place of residence on the ballot unless warranted by special circumstances. The purpose of a primary election is to enable the affiliated voters of a political party to choose the nominee of their party for each office. Any play on names having a tendency to confuse the voters and mislead

them as to the identity of the person seeking party nomination should be discouraged by the Legislature and frowned upon by the courts. However, the right of the plaintiff to use the name "Will Rogers" is unchallenged before this court. He stands in the legal position to claim every particle of good will attached to the use of that name as a result of his own efforts, but nothing more. Standing in such a position before the court, he may properly demand that the primary election laws and the requirements thereof be observed and applied to the Will Rogers of Ardmore.

Plaintiff is not, however, entitled to demand of the court the removal of the designation of residence from the ballots which removal might serve to confuse some party voters as to the identity of the plaintiff and thereby borrow from that portion of the good will of the name established by another. The writ of mandamus to compel the State Election Board to strike the name of Will Rogers of Ardmore is granted. The prayer that the place of resdence of Will Rogers of Oklahoma City be stricken is denied.

SWINDALL, ANDREWS, OSBORN, and BAYLESS, JJ., concur. McNEILL, J., concurs in result. RILEY, C. J., and CULLISON, V. C. J., dissent. WELCH, J., absent.

RILEY, C. J. (dissenting). I find no objection to the law stated in the majority decision, but I find no reason for the application of that law to the facts presented in the case at bar.

Will Rogers, Congressman, and candidate for re-election, seeks a writ of mandamus to compel the State Election Board to strike the name of Will Rogers of Ardmore from the official ballot for Congressman-at-Large.

The records of this court in cause No. 23840 reveal that Will Rogers, petitioner, so changed and contracted his name from William C. to that as stated for purposes best known to himself, and changing it just prior to his last successful political campaign. The self-same records filed in this court disclose the exact similarity of the adopted name to that of the native son, Will Rogers, the humorist, of Claremore and Oolagah fame. The petitioner, having developed this political acumen, seeks now the aid of this court for the purpose of stamping the political sagacity exclusively his own. I think this contrary to the tenets of politics, which tenets like unto those of a religion should be evangelized.

In the Fulton Case, this day decided, that which was designated by the State Election Board as a final hearing, but which, in my opinion, was not a hearing as contemplated by law, was allowed to become final.

It is my view that this court should not strike the name of one candidate for public office on the ground of insufficiency of a counter petition contrary to the board's final finding, and at the same time allow to remain the filing of another candidate, who is challenged, and whose counter petition is shown prima facie by the certificates of precinct registrars to be insufficient. In other words, we cannot rightfully make fish of one and fowl of the other.

In the instant case I would dismiss the petition for mandamus, for it is shown by the circumstances that good faith and reason do not exist for its issuance.