157 So.2d 718 (1963)
245 La. 145
Vernon J. WILTY, Jr.
v.
JEFFERSON PARISH DEMOCRATIC EXECUTIVE COMMITTEE and Mrs. Laura Verret Wilty (Qualification in the Name of Mrs. Vernon J. Wilty, Jr.).
No. 46969.
Supreme Court of Louisiana.
October 23, 1963.
Amended Decree October 30, 1963.
Reasons for Judgment November 12, 1963.
Concurring Opinion December 10, 1963.
Nathan Greenberg, Gilbert P. Cohen, Gretna, for plaintiff-applicant.
James E. Courtin, Dean A. Andrews, Jr., New Orleans, for defendants-respondents.
HAMLIN, Justice.
In conformity with the provisions of LSA-R.S. 18:364, which require disposition of cases of this character within twenty-four hours after submission, and giving particular consideration to the exigencies of the matter as relates to time, we herewith hand down our decisionthe reasons for which will follow in due course.
*719 The judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside. The judgment of the trial court is amended and as amended it is affirmed so as to read as follows: It is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Vernon J. Wilty, Jr., and against defendants, Jefferson Parish Democratic Executive Committee and Mrs. Laura Verret Wilty, reversing the decision of the Jefferson Parish Democratic Executive Committee of September 30, 1963, and sustaining the objections to the candidacy of Mrs. Laura Verret Wilty for nomination by the Democratic Party for the Office of Assessor of the Parish of Jefferson, State of Louisiana, under the name of Mrs. Vernon J. Wilty, Jr., and requiring that the Jefferson Parish Democratic Executive Committee certify her as a candidate for said office under the name of Mrs. Laura Verret Wilty. Defendants to pay all costs of these proceedings.
HAWTHORNE, J., is of the view that the result reached by the Court of Appeal is correct.

Amended Decree.
PER CURIAM.
It appearing manifest that our judgment and decree rendered herein on October 23, 1963, omitted to order compliance therewith within a time limit commensurate with the facts and law of this case, this Court, on its own motion, under the authority of LSA-R.S. 18:364, does hereby amend said judgment and decree to fix the date for compliance by the Jefferson Parish Democratic Executive Committee with its judgment and decree to be on or before Thursday, October 31, 1963, at 5:00 P.M., failing in which the judgment and decree of this Court shall serve as certification to the Honorable Wade O. Martin, Jr., Secretary of State of the State of Louisiana, in lieu of the certification of the Jefferson Parish Democratic Executive Committee, of Mrs. Laura Verret Wilty as a candidate for the Office of Assessor of the Parish of Jefferson, State of Louisiana, under the name of Mrs. Laura Verret Wiltv.
In all other respects, our judgment and decree of October 23, 1963 shall remain in force and effect.

Reasons for Judgment
HAMLIN, Justice.
Vernon J. Wilty, Jr., alleging that he was a qualified elector registered to vote in the Parish of Jefferson, that he was the incumbent Assessor of the Parish of Jefferson (which Office he had held for two terms), and that he was a candidate for re-election to the Office of Assessor of the Parish of Jefferson in the Democratic Primary election to be held on December 7, 1963, filed a petition with the Jefferson Parish Democratic Executive Committee objecting to the qualification of Mrs. Laura Verret Wilty as a candidate for Assessor of the Parish of Jefferson on the following grounds:
"(a) That the said Mrs. Laura Verret Wilty has qualified as a candidate for the aforesaid position using the name of `Mrs. Vernon J. Wilty, Jr.', which is not her correct legal name.
"(b) That the use of the name `Mrs. Vernon J. Wilty, Jr.', by the said Mrs. Laura Verret Wilty is deceptively similar to petitioner's name, and her continued use of the name may mislead the public for the reason that the said name is identical to petitioner's name, with the exception of the title of `Mrs.'
"(c) That petitioner is further informed and verily believes, and therefore avers on the basis of such information and belief, that the correct legal name of the said Mrs. Laura Verret Wilty is as set forth herein, namely, Mrs. Laura Verret Wilty, and not `Mrs. Vernon J. Wilty, Jr.'
"(d) That petitioner desires to oppose the qualification of the said Mrs. Laura Verret Wilty in the name of `Mrs. Vernon J. Wilty, Jr;' that petitioner *720 further avers that her application to become a candidate for the position of Assessor of the Parish of Jefferson should be rejected as having been filed under an improper name, or, in the alternative, that the said application be accepted permitting the use of the name of Mrs. Laura Verret Wilty or Mrs. Laura V. Wilty."
The Jefferson Parish Democratic Executive Committee met on September 30, 1963 and voted (15 for, none against) to continue Mrs. Vernon J. Wilty, Jr. as a candidate and to leave her name as it appeared on the qualifying papers, i. e., "Mrs. Vernon J. Wilty, Jr."
Thereafter, Vernon J. Wilty, Jr. filed an appeal in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, naming the Jefferson Parish Democratic Executive Committee and Mrs. Laura Verret Wilty as defendants; he alleged the same objections as above set forth and prayed that the judgment of the Jefferson Parish Democratic Executive Committee be reversed and that the court sustain his asserted objections to the candidacy of Mrs. Laura Verret Wilty. Alternatively, he prayed that Mrs. Laura Verret Wilty should be permitted to participate in the aforesaid Democratic Primary election and certified as a candidate either as Laura V. Wilty or Laura Verret Wilty.
After filing exceptions of no cause and no right of action, Mrs. Wilty answered plaintiff's petition, declaring "that she married Vernon J. Wilty, Jr., legally and has been his wife and the mother of his children for some time, particularly during the terms when he served as Assessor for the Parish of Jefferson, being known as Mrs. Vernon J. Wilty, Jr.; that she is entitled to said name, it having been given to her as a result of her marriage contract with the plaintiff; that she is registered on the voter rolls of the Parish of Jefferson in said name and qualified as a candidate for the Assessor's office in said name and according to her registration certificate." She prayed that plaintiff's petition be dismissed.
The Jefferson Parish Democratic Executive Committee filed an "Answer and Special Defenses" to plaintiff's suit; it averred, as a special defense, that the Registration Rolls of the Parish of Jefferson demonstrated that a female had registered under the name of Mrs. Vernon J. Wilty, Jr.
The trial court rendered judgment in favor of Vernon J. Wilty, Jr., dismissing the exceptions filed by Mrs. Wilty and "reversing the decision of the Jefferson Parish Democratic Executive Committee of September 30, 1963, and sustaining the objections to the candidacy of Mrs. Laura Verret Wilty for nomination by the Democratic Party for the office of Assessor of the Parish of Jefferson, State of Louisiana, under the name of Mrs. Vernon J. Wilty, Jr., and requiring that the Jefferson Parish Democratic Executive Committee certify her as a candidate for said office under the name of LAURA FRIEDA WILTY or LAURA VERRET WILTY. * * *"
Mrs. Wilty appealed suspensively to this Court; we transferred the appeal to the Court of Appeal, Fourth Circuit, holding that the matter did not fall within our appellate jurisdiction.
After argument, the Court of Appeal reversed and set aside the judgment of the trial court and ordered the Jefferson Parish Democratic Executive Committee to reinstate and to certify Mrs. Vernon J. Wilty, Jr., as a candidate for the Office of Assessor under the name of "Mrs. Vernon J. Wilty, Jr." and no other.
In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, LSA-Const. of 1921), we directed Certiorari to the Court of Appeal in order that we might review its judgment. In conformity with the provisions of LSA-R.S. 18:364, we rendered our decree in the matter within twenty-four hours after submission. We now set forth the reasons for our decision.
The facts of record reflect that Vernon John Wilty, Jr. and Laura Frieda Verret were married on January 6, 1951 in the Parish of Jefferson; on May 7, 1963, they *721 were judicially separated by judgment of the Twenty-Fourth Judicial District Court for the Parish of Jefferson, in a suit entitled, "Laura Verret Wilty v. Vernon Wilty, Jr., Her Husband", No. 69-321. Mrs. Wilty has been registered as a voter of the Parish of Jefferson since September 20, 1951; her registration certificate bears the name "Mrs. Vernon J. Wilty, Jr." and her signature affixed is the same.
A list showing the names of candidates in Jefferson Parish, together with the numbers assigned to each for the Democratic Primary election of December 7, 1963, was sent to the Clerk of Court for the Parish of Jefferson by the Secretary of State on October 1, 1963; Mrs. Vernon J. Wilty, Jr. was listed as No. 192, and Vernon John Wilty, Jr. was listed as No. 193. On the official ballot which will be submitted to the voting public on December 7, 1963, the last names or surnames of the candidates will appear first in large print and the other names will appear in very small print (LSA-R.S. 18:316) i. e., 192WILTY, Vernon J., Jr., (Mrs.); 193WILTY, Vernon John, Jr.
Counsel for relator contends that the above listing is confusing and could prevent the voter from distinguishing between the persons of Mr. and Mrs. Wilty. It is Mrs. Wilty's contention that because she is still married to Mr. Wilty[1] and because she is registered under and uses this name, she is entitled to be a candidate under the name of Mrs. Vernon J. Wilty, Jr.
It is self-explanatory that the voting public will be confused in their choice when they are presented with the names of two persons, one following the other, whose surnames are identical and whose first Christian names are identical. This is particularly true when consideration is given to the fact that voters will be making their choice for state officials as well as for parish officials.
We agree with the conclusions of the trial court and the Court of Appeal that there is no definite law or decision in Louisiana as to what is the legal name of a married woman. "Fairness" in party primary elections is the primary spirit of our law, and our decision in this matter will be predicated on such quality or principle.
Section 4 of Article VIII of the Louisiana Constitution of 1921 provides:
"Primary elections; conventions; fairness; qualifications of voters and delegates
"Section 4. The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates. No person shall vote at any primary election or in any convention or other political assembly held for the purpose of nominating any candidate for public office, unless he is at the time a registered voter, and have such other and additional qualifications as may be prescribed by the party of which candidates for public office are to be nominated. And in all political conventions in this State the apportionment of representation shall be on the basis of population.
"* * *"
"The duty imposed upon the Legislature by this article of the Constitution is mandatory. It must enact laws to make party primary elections fair to such political factions as may exist within the party and fair to all candidates who enter primaries. While the Constitution sets forth an affirmative proposition, it is pregnant with the negative *722 proposition that the Legislature shall not pass laws making party primaries unfair to factions and candidates." State ex rel. Ward v. Board of Sup'rs of Elections, 186 La. 949, 173 So. 726.
"It is not true that it is by delegation from the Legislature that the state central committees hold the power of fixing the political qualifications of the voters at the primary. They hold said power virtute officii, as being the governing bodies of the political parties. The Legislature has simply abstained from interference, leaving the power where it originally resided and naturally belongs. And in so doing it has but obeyed the constitutional injunction to pass laws to secure the fairness of primaries. * * *" State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430. (Emphasis ours.)
"* * * His right to become a candidate was created by that law and could be exercised only upon the terms and conditions prescribed by the law." State ex rel. Denny v. Members of Caddo Parish, etc., 201 La. 485, 9 So.2d 657.
Art. VIII, Sec. 1, Sub-section (c) (7), La.Const. of 1921, provides that an application for registration entitling a citizen of Louisiana to vote shall be in the following form:
"I am a citizen of the State of Louisiana. My name is Mr. ........, Mrs........., Miss ........ * * *."[2]
Sub-section (e) of Sec. 1, Art. VIII, La. Const. of 1921, states:
"Identity. He must in all cases be able to establish that he is the identical person whom he represents himself to be when applying for registration, and when presenting himself at the polls for the purpose of voting in any election or primary election."[3]
An analysis of the above provisions of the Constitution shows that identity rather than name is stressed; they do not state what an applicant's legal name is nor do they set forth what name or names he should assign to himself.
A person desiring to become a candidate in any primary that has been called shall file with the respective officers designated his intention to become a candidate at the primary, accompanied by a declaration under oath that to the best of his knowledge and belief he is a duly qualified elector under the constitution and laws of this state,[4] that he is a member of the party calling the primary, and that he possesses the qualifications required by the state central committee of the party. LSA-R.S. 18:309.
Art. VIII, Sec. 15, La.Const. of 1921, among other requirements, provides that a write-in candidate for any offce shall file with the Clerk of the District Court of the parish in which he is seeking office, a statement containing the correct name under which he is to be voted for.
We do not find any mandate setting forth by what name a candidate for office shall call himself; nor do we find any mandate *723 to the effect that a candidate for office shall use the same name as a candidate for office as he employed on his application for registration, although it is imperative that he be an elector.
It is now incumbent upon us to determine what name a married woman, neither widowed nor divorced, should use under certain circumstances and what name she may use under other circumstances.
"A name is a word or words used to distinguish and identify a person.
"A name is a word or words, designation, or appellation used to distinguish a person or thing or class from others; and, more particularly, one or more words used to distinguish a person. Names are used merely as one method of indicating the identity of persons; they are descriptive of persons for identification, since the identity is the essential thing, and it has frequently been held that, when identity is certain, a variance in, or misspelling of, the name is immaterial. * * *
"* * *" 65 C.J.S. Names § 1, pp. 1, 2.
"Given Name and Surname
"* * *
"a. In General
"A person's name consists of a Christian or given name or names, and of a surname or family name which generally is derived from the common name of his parents.
"* * *
"Surname. The surname or family name of a person is that which is derived from the common name of his parents, or is borne by him in common with other members of his family.
"b. Given Name
"The Christian or given name of a person is the name given him after his birth or at baptism, or which is after-ward assumed by him in addition to his family name, and it is an essential part of his name.
"* * *
"c. Name of Married Woman
"At marriage the wife loses her maiden surname and takes her husband's surname, and thereafter her name consists of her own Christian or given name or names with her husband's surname.
"At marriage the wife takes the husband's surname which becomes her legal name. Her maiden surname is absolutely lost, and she ceases to be known thereby. Otherwise, her name is unchanged. She uses her own Christian or given name or names with her husband's surname; and, in a strict sense, she is not properly designated as `Mrs.' followed by her husband's initial or given and surname, unless it appears that she is so known. There is authority, however, which holds that by custom a married woman is designated by the use of the Christian name, or names, if he has more than one, of the husband, together with the appellative abbreviation `Mrs.,' prefixed to the surname, and that generally her identification is more perfect and complete by the use of her husband's Christian name or names than by the use of her own. [Emphasis ours.]
"* * *" 65 C.J.S. Names § 3, pp. 2, 3, 4. See, 38 Am.Jur. Name Sec. 10 Married Woman's Name, p. 600; Roberts v. Grayson, 233 Ala. 658, 173 So. 38; Carlton v. Phelan, 100 Fla. 1164, 131 So. 117. Cf. LSA-Code of Civil Procedure, Art. 891; LSA-R.S. 40:302.
"The prefix `Mrs.' shows undoubtedly that at some time the defendant had been married to one Francis M. Phelan, Sr. Such prefix is not a name, but a mere title that usually distinguishes the person referred to as a married woman. However, it is not used exclusively by *724 married women. * * *" Carlton v. Phelan, 100 Fla. 1164, 131 So. 117. Cf. Succession of Kneipp, 172 La. 411, 134 So. 376.
"Middle names and initials generally are held immaterial, particularly in jurisdictions where the law recognizes but one Christian or given name; but there is a tendency to give greater regard to the middle name or initial and in some jurisdictions it is held to be a material part of a person's name.
"* * *" 65 C.J.S. Names § 4, p. 4.
We conclude that a married woman's designation or appellation should be that of her Christian name and her husband's surname. If she wishes to use her maiden surname as a middle name (for such reasons as identity), she has the right to exercise such privilege. Social custom, however, permits a married woman to use her husband's Christian name and surname with the prefix "Mrs."
Mrs. Wilty contends that she is known in her community by the name of Mrs. Vernon J. Wilty, Jr. and is distinguished by such name; that she has used the name of Mrs. Vernon J. Wilty, Jr. in registering her children in school. She further argues that her name should appear on the ballot as Mrs. Vernon J. Wilty, Jr., because she has done all of the political acts and actions of her husband in that name and has lived by the name for over twelve years. The record contains neither proof nor contradiction of her contentions.
We do not find the case of Huff v. State Election Board, 168 Okl. 277, 32 P.2d 920, 93 A.L.R. 906, on which the Court of Appeal relied, apposite to the present controversy. There was no question of separation or similarity of names in the Huff case; the issue for determination was whether a candidate for office could use a name and prefix by which she was known and which she employed in business, i. e., Mrs. I. L. Huff, or whether she should use another name on the ballot. The Oklahoma Supreme Court, in deciding that Mrs. Huff could employ the name of Mrs. I. L. Huff, stated:
"We do not care to enter into any lengthy discussion of this question, which has been so fully discussed in the text and cases we have cited, as well as many others. We shall content ourselves with expressing our adherence to the views of those courts which hold that a person may change his or her name in good faith and for an honest purpose, by adopting a new name and transacting his or her business and holding himself or herself out under the new name, with the acquiescence and recognition of his or her friends, and this right is not abrogated by the Constitution or any statute of this state; and that under the circumstances of this case a married woman has the right to adopt `Mrs.' as a part of her name with equal propriety as she could an additional Christian or given name or initial. The honesty and good faith of the petitioner in adopting the name of `Mrs. I. L. Huff' being admitted, the writ is granted."
As previously stated herein, "fairness" in elections is our primary concern; such fairness is related to the "public interest" and the "public good." In association with such a principle, we must consider the custom that Mrs. Wilty states she has used.
"* * * We agree with counsel that this court should not grant the writ unless some interest of the public is involved, or, in other words, unless the public has some right involved in the question before the court. To determine this we must consider the meaning of the terms under discussion. By `publici juris,' we understand, is meant `of public right.' The word `public,' in this sense, means `pertaining to the people, or affecting the community at large; that which concerns a multitude of people.' Webster's New International *725 Dictionary; Greenl. Ev. 152; Stockton v. Williams, 1 Doug. (Mich.) 546; Morgan v. Cree, 46 Vt. 773, 14 Am.Rep. 640. The word `right,' as used here, is defined in Bouvier's Law Dictionary as `a well-founded claim; an interest; concern; advantage; benefit.' We understand `public interest' to mean more than a mere curiosity; it means something in which the public, the community at large has some pecuniary interest, or some interest by which their legal rights or liabilities are affected. It does not mean anything so narrow as the interests of the particular localities which may be affected by the matters in question." State ex rel. Freeling v. Lyon, 63 Okl. 285, 165 P. 419. See, State ex rel. Glenn v. Crockett, 86 Okl. 124, 206 P. 816. Cf. Lawrason v. Swartz, 132 La. 511, 61 So. 554; Cust v. Item Co., 200 La. 515, 8 So.2d 361.
"* * * A custom is likewise invalid where it is based on a disregard of the relations which exist between men, or the duties which in law and morals they owe to each other, or is obviously contrary to justice and fair dealing.
"* * *" 55 Am.Jur. Usages and Customs, Sec. 16, p. 278.
"Customs and usages must be harmonious with public policy whether defined by the common law, by statutory enactment, or by constitutional provision. It is the generally accepted rule that a usage or custom in conflict with or repugnant to an existing statutory enactment or to a constitutional provision will not be enforced. * *" 55 Am.Jur. Usages and Customs, Sec. 17, p. 279.
"A custom or usage must be reasonable. It is not unreasonable merely because it is injurious to private interests if it be for the public good, but if it is contrary to the public good it is repugnant to the law of reason and void.
"* * * A custom that is contrary to the public good or injurious or prejudicial to the many and beneficial only to some particular person is repugnant to the law of reason and is void, but practices of this character very seldom indeed possess the other elements and requisites of binding usages. * * *" 25 C.J.S. Customs and Usages, § 13, pp. 92, 93.
"The question of the validity, effect, and reasonableness of a custom and the question of whether undisputed facts and circumstances are sufficient to show a custom are questions of law for the court. Whether the existence of the custom has been established as a fact and whether the existence of knowledge of the custom has been established must, where the evidence is conflicting, be determined as other questions of fact.
"* * *" 25 C.J.S. Customs and Usages § 34, p. 130. See, Succession of Rodosta, La.App., 144 So.2d 429.
Summarizing, we find no positive law or jurisprudence in Louisiana ordering a married woman to use a particular appellation; we find no law stating that she has to qualify as a candidate for office under the name she gave on her application for registration, identity being the factor of importance. The Constitution, Art. VIII, Sec. 4, demands fairness in the enactment of legislation relating to party primaries; it follows that this fairness is also demanded of the Jefferson Parish Democratic Executive Committee.
We conclude that paramount public rights are involved herein and that custom must yield in favor thereof. The public is entitled to have a fair election held. It follows that an election is not a fair one where there is a circumstance which confuses (or seriously tends to confuse) the voter as to the identity of the candidates, especially considering the extremely long ballot with numerous names thereon (the *726 last names appearing in large print and the other names being in very small print) that will be employed in the ensuing primary election.
When Mr. Wilty protested, the Jefferson Parish Democratic Executive Committee had the right, and it was its duty, to order that Mrs. Wilty's name appear upon the ballot legally and in such manner that the voters of Jefferson Parish would not be confused, irrespective of the name under which she was registered. When the Committee acted as it did, its decision was contrary to and violative of the underlying spirit of our Constitutionthat fair elections should be held.
Therefore, the Jefferson Parish Democratic Executive Committee must certify Mrs. Wilty as a candidate for the Office of Assessor under her Christian name, her family surname, and her husband's surname, using the prefix "Mrs.", i. e., Mrs. Laura Verret Wilty. See, State ex rel. Rogers v. State Election Board, 168 Okl. 441, 33 P.2d 806; Report and Opinions of the Attorney General of Louisiana, May 1, 1932 to April 1, 1934, p. 616.
Because of our foregoing conclusions, we do not find it necessary to discuss the Jefferson Parish Democratic Executive Committee's contention to the effect that Mr. Wilty is making a collateral attack upon the registration laws of this State.
For convenience, we repeat herewith the decree handed down by us in this matter on October 23, 1963.
The judgment of the Court of Appeal, Fourth Circuit, is reversed and set aside. The judgment of the trial court is amended, and as amended it is affirmed so as to read as follows: It is ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Vernon J. Wilty, Jr., and against defendants, Jefferson Parish Democratic Executive Committee and Mrs. Laura Verret Wilty, reversing the decision of the Jefferson Parish Democratic Executive Committee of September 30, 1963, and sustaining the objections to the candidacy of Mrs. Laura Verret Wilty for nomination by the Democratic Party for the Office of Assessor of the Parish of Jefferson, State of Louisiana, under the name of Mrs. Vernon J. Wilty, Jr., and requiring that the Jefferson Parish Democratic Executive Committee certify her as a candidate for said office under the name of Mrs. Laura Verret Wilty. Defendants to pay all costs of these proceedings.
McCALEB, SANDERS and SUMMERS, JJ., concur with written reasons.
HAWTHORNE, J., dissents with written reasons.
McCALEB, Justice (concurring).
During oral argument the issue was raised as to whether the courts have the right or, as has been sometimes stated, "jurisdiction" to substitute their judgment for that of the Jefferson Parish Democratic Executive Committee in this case as it involves a purely political question. Pursuant to the discussion, the landmark case of Reid v. Brunot, 153 La. 490, 96 So. 43, was cited in support of the proposition that the courts are without jurisdiction "in the absence of special constitutional or statutory authorization" of matters relating to elections as those matters belong to the political department of government.[1]
*727 Aside from my belief that the legal principle upon which Reid v. Brunot rested was discarded in O'Keefe v. Burke, 226 La. 1026, 78 So.2d 161,[2] it is perfectly clear that that decision does not control this case even if it still stands.
In Reid v. Brunot it was found that neither the Constitution nor the primary law empowered the court to grant relief. The situation in this case, however, is entirely different because R.S. 18:307 authorizes an opposing candidate to object to the candidacy of another person by filing such objection with the chairman or secretary of the Committee calling the primary. It further provides that such objection shall be heard and decided by the Committee and that "Each party may appeal to any court of competent jurisdiction for relief." Thus, jurisdiction has been specially conferred upon the courts by the Legislature to review the Committee's decision and grant such relief as they deem appropriate and just under the particular circumstances involved. This is exactly what the district court, the court of appeal and this Court has done in the instant case.
On the merits, I am in accord with the majority opinion.
SANDERS, Justice (concurring).
In my opinion, the result reached in the instant case is correct.
Although unnecessary for the decision, the majority cites, with apparent approval, the rule that by marriage a woman loses her maiden surname and takes her husband's surname as her legal name. I am unable to agree that marriage has this effect under the law of Louisiana.
The common law fiction of merger between husband and wife, from which a change of the wife's legal name arises, has never obtained in Louisiana. Rather, this state has followed the civil law doctrine. After marriage, the legal name of a woman continues to be her maiden name, or patronym. The surname of the husband is used only as a matter of custom to indicate the marital status of the wife. See Succession of Kneipp, 172 La. 411, 134 So. 376; 1 McMahon Louisiana Practice p. 147; 1 Planiol, Traité Eléméntaire De Droit Civil (An English Translation by the Louisiana State Law Institute) No. 390.
Accordingly, I concur in the decree.
HAWTHORNE, Justice (dissenting).
In this case plaintiff-relator is not objecting to the candidacy of defendant-respondent. In other words, he is not contesting her right to become a candidate in the primary election; he is simply objecting to her qualifying as a candidate for the Democratic nomination for assessor of Jefferson Parish under the name of "Mrs. Vernon J. Wilty, Jr.", the name under which she has been a registered voter of that parish since 1951. Plaintiff is also a candidate for that office, having qualified under the name of "Vernon John Wilty, Jr." Plaintiff's protest timely filed with the Jefferson Parish Democratic Executive Committee opposing defendant's qualifying as a candidate under the name of "Mrs. Vernon J. Wilty, Jr." was disallowed by that committee, which voted unanimously to accept the defendant's qualification under the name "Mrs. Vernon J. Wilty, Jr."
This case properly belongs to the political department of the government, as there is no statute or constitutional provision giving the judiciary the power to act in a case like this. Reid v. Brunot, 153 La. 490, 96 So. 43, and numerous authorities there cited. In the Reid case this court said:
"The first question to be determined is as to the source and extent of the courts' jurisdiction and power over the parties and subject-matter of this controversy.
*728 "It is a well-settled and established principle of law that all elections and all matters relating to or affecting the same, belong to the political department of the government and are, therefore, beyond the control of the judicial power, in the absence of special constitutional or statutory authorization. No person has a right to invoke the aid of the courts in an election contest, unless there be some express law vesting the courts with jurisdiction and conferring such right of action upon the contestant."
In the instant case the majority neither cites nor relies upon any express law vesting this court with jurisdiction and conferring this right of action, but bases its conclusion on the premise that the voter will be confused as to the identity of these two candidates and that this confusion will result in an unfair election. Even if this premise were valid, and I do not think it is, it does not serve to bring the case within the control of the judiciary, sole control being vested in the Jefferson Parish Democratic Executive Committee. Therefore the committee's action in disallowing plaintiff's protest is final and not subject to review by any court.
The opinion in the instant case is contrary to the sound principle of law set out in Reid v. Brunot, supra, and the many authorities there cited.
Even if I should concede that the court has jurisdiction, I cannot agree that the voters will not be able to identify the two candidates and will become confused. One of the candidates is designated by the prefix "Mrs.", and is thus clearly shown to be a woman; the other is obviously a man. In effect, the majority says the voters (all of whom are over 21 years of age) cannot tell the difference between a man and a woman when they enter the voting booth. As to whether they can at other times the court is not called upon to express any view.
SUMMERS, Justice (concurring).
I join in the concurring opinion of Mr. Justice SANDERS for the reasons he has assigned.
NOTES
[1] "The legal as well as the ordinary meaning of `spouse' is one's wife or husband. Marriage is only dissolved by divorce, or death of one of the parties. As a decree of separation from bed and board does not dissolve a marriage, we have no recourse but to hold that deceased left a `surviving spouse' within the wording and purpose of Article 2315." Harris v. Lumbermen's Mutual Casualty Co., La.App., 48 So.2d 728. See. LSA-C.C. Arts. 152, 153, 155, and 159.
[2] LSA-R.S. 18:32 sets forth a similar application for registration; the applicant must also state the party with which he is affiliated.
[3] LSA-R.S. 18:37 recites that, "The applicant shall in all cases be able to establish that he is the identical person whom he represents himself to be when applying for registration. If the registrar has good reason to believe that he is not the same person, he may require the applicant to produce two credible registered voters of his precinct to make oath to that effect."
[4] "The term `duly qualified elector' employed in the foregoing statutory provision can only be used in its broadest sense, meaning a person qualified to vote in the primary at which he seeks the nomination of the political party holding the primary." Sciambra v. Orleans Parish Republican Executive Comm., La. App., 69 So.2d 171.
[1] In Reid v. Brunot, Judge Reid was claiming that he was entitled to compete in a second primary because Judge Brunot had not received a majority of the legal votes cast. The Court held that it was without jurisdiction of the case because the Primary Election Law then in effect (it has long since been changed by the Legislature) limited the contest of elections to those cases in which the party initiating the contest was claiming the nomination and there was no provision of the law conferring upon the courts jurisdiction of a case when the contestant was merely claiming the right to enter a second primary.
[2] See dissenting opinion at pages 1033 through 1038 of 226 Louisiana Reports. [226 La. pages 1033-1038, 78 So.2d pages 163-165].