342 So.2d 251 (1977)
Clyde J. WELCKER
v.
Beulah E. Little, wife of Clyde J. WELCKER.
No. 7791.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
Rehearing Denied February 15, 1977.
Writ Refused March 31, 1977.
*252 Young & Mars, Theodore A. Mars, Jr., and Maurice Gomila, New Orleans, for plaintiff-appellant.
Evangeline M. Vavrick, New Orleans, for defendant-appellee.
Before BOUTALL, SCHOTT and BEER, JJ.
BEER, Judge.
Clyde J. Welcker, appellant, seeks injunctive relief to prohibit his divorced wife, nee Beulah Little, from any further use of his surname, "Welcker." Appellee, a retired principal in the New Orleans public school system, contends that she has been generally known, during the seven-year period of her marriage to appellant, and subsequent to the judgment of divorce, as "Beulah Little Welcker." This is the name that she continuously used during her marriage and since the divorce in applying for and maintaining checking accounts, charge accounts, automobile title registration, social security registration, insurance, retirement benefits, etc. Thus, we are confronted by the res nova question of whether or not the dissolution of marriage by divorce forms a basis for injunctive relief in behalf of a former husband seeking to prevent his former wife from using a combination of her Christian name, her family surname and her former husband's surname, such as, in this instance: "Beulah Little Welcker."
In support of their contentions, each of the parties rely upon Wilty v. Jefferson Parish Democratic Executive Committee, 245 La. 145, 157 So.2d 718 (La. 1963).
However, Wilty, supra, though persuasive on several points, is not controlling, for it deals with parties who were separated, not divorced.
Also persuasive but not controlling are the commentaries which are found in 1 Planiol, Traite Elementaire De Droit Civil (An English Translation by the Louisiana State Law Institute) (1959).
Of particular interest are these observations of Planiol:
"390. Preservation of the Wife's Patronymic Name
Contrary to the general opinion, marriage does not cause the wife to acquire the name of her husband. Nothing in the law assumes that marriage entails the change of her name, as it does of her nationality. There is, moreover, no reason why it should have this effect, because a name indicates descent. A married woman has, therefore, no name other than that of her family, her maiden name received from her father. It is by it that she should be designated in civil and judicial acts which concern her. And, in practice, most notaries and other draftsmen of acts observe this rule. But her name should be followed by mention of her marriage and by the name of her husband.

* * * * * *

*253 "392. The Wife's Right to Use Her Husband's Name
A universal right exists to designate a married woman by her husband's name. This usage may be held to have been recognized by the law of February 6, 1893 (Infra No. 395). This does not contradict what has just been said. The wife preserves her patronymic name but she has the right to use her husband's name in all acts of her civil and even of her commercial life. In practice, she often even refers to herself by the "given name" of her husband.

* * * * * *
"395. Effect of Divorce
Inasmuch as marriage does not cause a woman to acquire the name of her husband, the question of the divorcee's name is solved in advance. It is asked whether a wife has a right to continue to bear her husband's name after divorce? Evidently, no, because this name did not belong to her even during marriage. If it was given to her, it was solely to attest a fact, her status as a married woman when obtained. The fact having ceased, this designation may no longer be used.
"The husband thus has a right to constrain his wife not to use his name any more. He may, for this purpose, apply to the courts and if need be, obtain damages."
On the other hand, we take judicial notice of what is common knowledge, human experience, and ". . . social . . conditions prevailing in this state . . ." LSA-R.S. 15:422; also see Saia Motor Freight Lines, Inc. v. Agerton, 275 So.2d 393, 395 (La. 1973); Elba v. Thomas, 59 So.2d 732, 736 (La.Ct. of Appeals, Orls. 1952); State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir., 1970).
Thus, we judicially recognize the generally existent custom under which divorced women are known by a combination of their Christian name, their family surname and their former husband's surname, and, in view of the fact that no express or positive law exists in this jurisdiction, we justifiably look to established custom and equity for assistance in deciding this case. See LSA-C.C. Art. 21 in pari materia with Art. 3. Also see Tete, The Code, Custom and the Courts: Notes Toward a Louisiana Theory of Precedent, 48 Tul.L.Rev. 1, 12, esp. 22 (1973); Franklin, Equity in Louisiana: The Role of Article 21, 9 Tul.L.Rev. 485 (1935). Indeed, the courts of Louisiana have long taken cognizance of custom as a source of law. W. B. Thompson and Co. v. Gosserand, 131 La. 1056, 60 So. 682, 685 (1913); Strahan v. Garis, 183 So.2d 392 (La.App. 4th Cir., 1966). In Esso Standard Oil Co. v. Crescent River Port Pilots' Assn., 235 La. 937, 106 So.2d 316 (1958), the Supreme Court stated: ". . . custom which has existed over a long period of time takes on the force of law. Rev.Civ. Code, Art. 3; Broussard v. Bernard, 7 La. 211 (1834); Etna Forge and Bolt v. Youngstown Sheet and Tube Co., 282 F. 786 (C.C.A. 3 1922)."
Significantly, the French civil law acknowledges the legitimacy of custom praeter legem (i.e. custom as to a matter not covered by legislation) as a source of law. See Loussouarn, The Relative Importance of Legislation, Custom, Doctrine and Precedent in French Law, 18 La.L.Rev. 235, 248, 251.
On the other hand, we are mindful of our civil law traditions, and, thus, we are also much influenced by Planiol's commentaries and by LSA-C.C. Art. 159, which states that a divorce shall place the parties ". . . in the same situation with respect to each other as if no marriage had ever been contracted between them."
Consequently, we are cognizant that, on one side, are Planiol's commentaries and certain codal implications which validate appellant's contention, and, on the other side, generally established judicially noted custom which validates the contention of appellee.
An additional factor for consideration is our recognition of the right of a divorced woman to revert to the use of her maiden name. See "Right to Use Maiden *254 Surname," 67 A.L.R.3d 1266, Secs. 3, 4; Cf. Succession of Kneipt, 172 La. 411, 134 So. 376 (1931) and Wilty, supra. Is there, implicit in this recognition, an alternative yet unassailable right to be known by her Christian name, her maiden name and the surname of her former husband?
Although there were no children born of this marriage which was of reasonably short duration (approximately seven years), the effect of our judgment must be considered in light of its effect on all divorced women, childless or otherwise and whose marriages were of short duration or otherwise.
It is doubtful that Planiol could have anticipated present-day mores regarding divorce. Statistically and sociologically, it has, for better or worse, become an important factor in the mainstream of modern life and, thus, has provoked the establishment of its own customs. Important among these is the generally acknowledged acceptability of the use of the husband's surname by his former spouse. We need not burden this opinion with a consideration of the factors which precipitated the establishment of this custom. It is sufficient for our purpose to take judicial notice of its existence and to acknowledge our awareness of the problems that could result from its unwarranted judicial rejection.
We are of the view that appellant has not demonstrated that the trial court erred in its denial of the injunctive relief sought by him, and, thus, we affirm the judgment in all respects. Costs of this appeal are to be borne by appellants, Clyde J. Welcker.
AFFIRMED.